(No. 16706.—Reversed and remanded.)
GEORGIE G. PARKER et al. Appellees, vs. JULIUS ROSEN-
BERG, Appellant.

*Opinion filed June 18, 1925.*

1. EASEMENTS—*adverse use is essential to create easement for right of way.* To create an easement in the land of another for a right of way to and from adjoining property requires proof of the existence of the same elements as are necessary in the establishment of a public highway over private property by prescription,— *i. e.,* the use must be adverse, uninterrupted, exclusive, continuous and under a claim of right.

2. SAME—*permissive use cannot ripen into prescriptive right— presumption.* Mere permissive use cannot ripen into a prescriptive right whatever length of time such permission to pass over the lands of another is enjoyed, and the use of vacant, uninclosed and unoccupied land is presumed to be by consent and not adverse.

3. SAME—*prescriptive right must be clearly established.* The law presumes an easement when facts are shown which admit of such presumption, but in order to obtain a prescriptive right of way over the lands of another it is essential that all the elements necessary to establish such right be distinctly proved.

APPEAL from the Circuit Court of Madison county; the Hon. J. F. GILLHAM, Judge, presiding.

WILLIAMSON, SIMPSON & GEORGE, for appellant.

WILLIAM P. BOYNTON, for appellees.

Mr. JUSTICE FARMER delivered the opinion of the court:

A bill was filed in the circuit court of Madison county by appellees in May, 1923, claiming and alleging a prescriptive right to a twelve-foot roadway across the land of appellant, and seeking to enjoin appellant from obstructing the roadway or interfering with the passage of any and all persons having occasion to travel thereon. Appellant answered the bill, denying the alleged right of appellees to a roadway over his premises and admitting he had obstructed the road. The cause was heard by the court and a decree entered in accordance with the prayer of the bill,

perpetually enjoining appellant from obstructing the road or interfering with any person traveling over it. From that order and decree appellant has prosecuted an appeal to this court.

From the evidence produced on the hearing it was shown that northwest of Alton, Illinois, is a small station on the Chicago, Peoria and St. Louis railroad called Clifton, and about a mile northwest of Clifton, on that railroad, is Riehl station. Extending northward from Clifton about two-thirds of the distance to Riehl is a high bluff, which slopes off toward Riehl. About a mile north of the bluff is the hard road leading from Alton to Jerseyville. From this paved highway a road extends southwesterly toward Riehl and another road extends southerly to Clifton. The land of appellant consists of about eighty-seven acres and is situated on top of the bluff. Immediately west of this land is a forty-acre tract belonging to J. C. Aldous, and adjoining the Aldous land on the westerly side is the forty-seven-acre tract of appellees. A highway known as Clifton Terrace road or Grafton road extends from Clifton station northerly along the easterly slope of the bluff and passes along the east side of appellant's land. From this road at some point where it touches appellant's land, and extending westward over appellant's land, is the roadway involved in this litigation. About 1902 appellees purchased from Z. H. Callame the entire eighty-seven acres lying west of appellant's land, which was then owned by a Mrs. Crocker. Appellees later sold the east forty acres to Aldous and have retained the west forty-seven acres. Appellant purchased his property in 1919 from C. R. Meston, who had owned it since 1907. Prior to that date the same land belonged to L. F. Stiritz, who bought it from Mrs. Crocker about 1903.

Frank S. Parker, one of appellees, testified that his land is located about a quarter of a mile from Riehl station and about three-quarters of a mile from Clifton. He bought

the entire eighty-seven acres,—being the forty-seven-acre tract which he now owns and the forty-acre tract later sold by him to Aldous and which lies between appellant's land and that of appellees,—from Z. H. Callame about 1902 or 1903. . Prior to selling the forty acres to Aldous witness lived in one of the houses located on the property and rented the other to the Y. W. C. A. That organization used it for several years as a summer camp, spending week ends on the property. After the purchase of the eighty-seven-acre tract witness used the road that had always been there, so far as he knew, going from his property across appellant's land down to Clifton. He testified the road started at Clifton, came up the hill right by the rock house located on appellant's land, and that he always went straight on through to the north of this rock house and thence west to his own property. He continued the use of this same road after he sold the forty acres to Aldous. About 1914 C. R. Meston, who at that time owned the property now belonging to appellant, made a change in a small part of the old road where it ran close to the house, moving it from three to five hundred feet north from the rock house and around a sink hole which was also near the house. He testified that Meston was making some improvements on the rock house and requested that the road be used as he had changed it. The road he used over appellant's property was more than a mere track and did not meander. He testified this was the only way he or any of his renters had in going to and from Clifton station. Witness did not live on the property all the time but had the property rented at different times to other people. There is a public road on the west of appellees' property, but this road is not accessible for use, due to the water backing up during high-water periods and the existence of a deep ravine on that side, which would necessitate building a bridge. The testimony shows that at the time Parker purchased the eighty-seven-acre tract from Callame he also obtained from Callame a

317—33

deed to a fourteen-foot L-shaped strip of ground which extended east a short distance and thence northerly across appellant's property. This strip was originally obtained by Callame from appellant's predecessor, affording Callame a way of going from his property to another tract of ground which he owned on the Grafton road, lying north of that of appellant. Parker testified that this fourteen-foot roadway extending northerly through appellant's place did not reach any public road, but that he used this road across Callame's place during one season when witness lived on his own property and was making a trip to Alton most every day. He stated that he made a contract with Callame and paid him for the right to drive through his property; that he used the hilltop road through Callame's land because he did not care to cross appellant's land and go up and down the hill. Witness further testified that he did not use the road across appellant's land for about a year and a half. It further appears from his testimony that some seven or eight years prior to the hearing he had some negotiations with F. A. Gully relative to establishing a right to a road through the property now belonging to appellant. Gully at that time was the manager of the land for Meston, appellant's predecessor in title.

Harvey Callame testified that he is the son of Z. H. Callame, who sold the property to appellees. He was born in the rock house located on appellant's property, forty-four years ago. He knew the road from Clifton leading through appellant's property to that of appellees. Witness remembered when the old road ran next to the rock house, and that Meston changed the course of the road at the house about five hundred feet. The road had been traveled for twenty-five or thirty years. There were no fences on appellant's property when witness knew it, and people were permitted to go through any part of the place.

Robert Lofts testified he had known appellant's land since 1878, and had known the road running from Clifton

Terrace past the rock house on appellant's property since that year. The main road ended at the rock house, and from there toward appellees' land a wagon road ran straight along the top of the bluff and was used for taking out logs and wood. The road extended on west past appellees' house. Witness remembered when Meston made a change in the road, shaped like a horseshoe, about eighty yards north of the rock house.

George Stiritz testified he is forty-eight years old and knew the roadway traveled from appellees' property down past the rock house owned by appellant. It was used as a regular road and was traveled longer than witness could remember. When Meston lived on the land now owned by the appellant he made a little change in the road at the rock house.

James Miner testified he had lived at Clifton forty-eight years and had known the road in question from that time. It was just a country road or driveway, and had been traveled for twenty years or more before Meston changed it and made it run a little north of the rock house.

Oswald Stanka testified that he is forty-six years old. He is familiar with the lands over which the road extended and had known the roadway ever since he could remember, as extending down through appellant's property past the old rock house. He remembered when Meston changed the road several hundred feet north of the house. The road had been traveled for over twenty years by people going back and forth on the ridge to appellees' land and down to Clifton. Witness farmed appellees' land a while. He didn't always use the road across appellant's property but used other ways to get out.

F. A. Gully testified for defendant that he managed the land of appellant for Meston during a period of five years. A road extended from appellees' property toward the east across appellant's property and passed near the stone house. The old road at the house ran between the house and a

deep swale about thirty feet distant. The house was made larger and the road was run around north of the swale about eighty yards. Another change was made in the road from the rock house down to the Clifton Terrace road while witness was there.

Julius Rosenberg, appellant, testified he purchased the property some four or five years before the hearing; that there were some fences on the property at the time but it was not entirely enclosed. He stated he had several conversations and some correspondence with Frank S. Parker relative to the latter's right to a roadway over witness' property; that Parker asked him if witness would permit him to go through there, and was told that he was perfectly welcome to go through, either himself or his family, but that other parties would not be allowed to do so on account of the destruction they had been causing. Appellees' property had been used in the summer time by some ladies' club. He stated that Parker never made any claim that he had a right of way or road through witness' farm, but said he had the consent of Meston to go through the property.

At this time a letter dated April 20, 1920, addressed to appellant and signed by Frank S. Parker was admitted in evidence. The letter referred to some friction and unpleasantness between the parties on account of persons using the road across appellant's land in going to and from the property of Parker. Parker stated that "the only road to Clifton station and Clifton road is through your place, and as groceries and supplies, baggage, or anybody coming by vehicle, have to go that way, I cannot see how we are going to get along without using it." The writer stated that he had made some suggestions the previous year to appellant which did not meet with the latter's approval, and requested appellant to suggest something better. Parker seemed anxious to compromise the matter, and also stated in the letter: "In the meantime, I ask your permission to allow parties desiring to reach my place via Clifton road to use your road

connecting to mine." Appellant said that appellees had used their wagon road through the Callame and Stewart property in getting to the Grafton road, and that Parker said Callame had refused to let him use that road any longer. In rebuttal, Parker denied some of the statements made by appellant. He further stated that he had no agreement with Meston at any time about the road, but stated that he did have Meston's permission to go through the property, inasmuch as he made no objection to it.

To establish an easement in the land of another for a right of way to and from adjoining property requires proof of the existence of the same elements necessary in the establishment of a public highway over private property by prescription. The use must be adverse, uninterrupted, exclusive, continuous and under a claim of right. (*Schmidt* v. *Brown,* 226 Ill. 590, and cases there cited.) The use of vacant, uninclosed and unoccupied land will be presumed to be by permission and not adverse. Mere permissive use is never sufficient, and whatever length of time such permission to pass over the lands of another is enjoyed it can not ripen into a prescriptive right. (*Illinois Central Railroad Co.* v. *Stewart,* 265 Ill. 35.) The roadway here involved is not claimed to be a public highway nor is it stated that the public has any interest in it. Appellees' contention is that they have acquired the right by prescription to use the way as a private road. As we understand the testimony, appellees already have an L-shaped right of way fourteen feet in width for road purposes, extending across a portion of appellant's farm to the lands of others, and over which appellees, by arrangement with the owners, during one season at least, traveled to and from the Grafton road. Another road joins appellees' property on the west. It is somewhat inaccessible under present conditions, but this road goes to Alton and also leads into the Grafton road.

It will be seen from the testimony that the roadway across appellant's property had been used for several years

by appellees, their tenants or renters, and by persons in earlier years in hauling timber and wood from the lands west of appellant's. When Meston owned the land and changed the location of the road from three to five hundred feet north of the rock house nothing was said about such change by anyone, and the road was used thereafter as changed and designated by Meston. Frank S. Parker testified that some seven or eight years prior to the hearing he had some negotiations with Gully, manager for Meston, relative to a roadway across the land here involved. After some difficulty arose between appellant and appellees concerning the use of the road, at no time prior to the filing of the bill, so far as the record shows, did Parker claim any adverse right to cross appellant's land over the roadway in question. Its use was continued and enjoyed so long as no one made any objection. In order to obtain a prescriptive right of way over the lands of another it is essential that all the elements necessary to establish such right should be clearly and distinctly proven. (*Chicago, Burlington and Quincy Railroad Co.* v. *Hammond,* 210 Ill. 187.) The law presumes an easement when facts are shown which admit of such presumption, yet such facts are not presumed but must be established by the greater weight of the evidence. (*Bontz* v. *Stear,* 285 Ill. 599.) The evidence as a whole does not satisfactorily show that the use of the roadway was enjoyed under such circumstances as to indicate that its use by anyone was adverse or under a claim of right. The testimony is consistent with the permissive use of the roadway.

As we view the record the proof is not sufficient to warrant the establishment of a prescriptive right over appellant's premises. The decree of the circuit court is therefore reversed and the cause remanded.

*Reversed and remanded.*