(No. 23992.—

GEORGE FRED RUSH, Appellee, *vs.* MARY A. COLLINS *et al.* Appellants.

*Opinion filed April 16, 1937—Rehearing denied June 3, 1937.*

ROBERT IRMIGER, (JOSEPH D. BRYAN, of counsel,) for appellants.

WALTER S. HOLDEN, for appellee.

Mr. JUSTICE WILSON delivered the opinion of the court:

George Fred Rush filed in the superior court of Cook county a complaint against the owners of two tracts of land over which there was a private alley in which he claimed an easement. An answer and a cross-bill were filed by certain of the defendants. John J. Gill, a defendant, filed no answer and was defaulted. Upon a hearing the cross-bill was dismissed, and the complaint was dismissed as to the defendant Thomas A. Collins. The decree permanently restrained the defendants from interfering with the plaintiff's use of the alley. Mary A. Collins and Helen H. Collins prosecute this appeal as owners of the property.

The land, over a part of which the alley extends, is located in the block immediately south of Fifty-seventh street between Blackstone and Harper avenues in the city

of Chicago. The plaintiff owns two six-apartment build-
ings at the northwest corner of the block at the intersection
of Fifty-seventh street and Blackstone avenue, and front-
ing on the latter street. His land extends 101½ feet along
the south side of Fifty-seventh street and 90 feet along the
east side of Blackstone avenue. There is a jog of land
owned by the plaintiff, 42 by 14 feet, on the south of the
land described which extends easterly to the alley in ques-
tion. The eastern three feet of the plaintiff's land is a
passageway in the rear of his building extending from
Fifty-seventh street to the jog of land mentioned.

Immediately east of the plaintiff's apartment buildings
(separated only by the passageway) is the land of the de-
fendants. It is improved with a brick building consisting
of two parts, connecting over the alley, both parts facing
Fifty-seventh street. The western or smaller part of the
building is between the passageway on the plaintiff's land
and the alley on the defendant's land, and the eastern part
extends from the alley to Harper avenue. Eleven feet of
the southern portion of the alley, immediately east of the
jog of the plaintiff's property and land extending on to
the south, is owned by the defendant Gill. Subsequent to
the erection of the apartments by the plaintiff he, the plain-
tiff, constructed a garage on the fourteen-foot strip of his
land. The doors of the garage open toward the alley a
very short distance from the eastern boundary line of the
jog. Gill has a garage on the south end of the alley which
he owns, standing eleven feet south of his north lot line.
The alley is the only means of access for automobiles to
the two garages. The plaintiff and the defendants each
owned their respective tracts of land previous to the con-
struction of the improvements thereon and when the block
was largely unimproved.

The principal testimony on behalf of the plaintiff was
that offered by himself and two other witnesses, with cer-
tain documentary evidence. The plaintiff testified that in

March, 1904, when he was contemplating the purchase of the property which he subsequently bought and improved, he had a conversation with respect to the alley with one Lander Whiton who had title to a part of the land. Whiton told the plaintiff he had an offer from one Dr. Cook who owned a part of the alley, and Whiton asked the plaintiff if he would go with the former to see Dr. Cook. The plaintiff and Whiton saw Dr. Cook. The latter told Whiton that he wanted only the part of the forty-two by fourteen-foot-jog which Whiton owned. Whiton replied that he could not sell that jog because the plaintiff wanted it as a way to reach the alley. Whiton then said that the plaintiff desired to know about the alley. Dr. Cook replied, "You know all about the alley. We made the alley years and years ago and you have been using it ever since. There is no question about the alley." The evidence shows an agreement of John C. Cook and Jennie L. Cook, (predecessor owners of the Gill property) with the Rosalie Music Hall Company (predecessor owner of the Collins property) allowing "free and unobstructed passage from Fifty-seventh street to the party of the second part" (the Cooks) "over the E. 13.7 feet" etc. being the alley in question.

The plaintiff then purchased an undivided one-half interest from Whiton and a one-half interest from the Joseph A. Sleeper estate. The plaintiff told Whiton at the time he made the purchase that he desired to see Chandler (who was or had been president of the Rosalie Music Hall Company) the owner of the other part of the alley. The plaintiff and Whiton saw Chandler the following day. Whiton said to Chandler, "Rush wants to know about the alley. He is talking about buying it. He wants to know about the arrangement about the alley." Chandler replied, "We all made it together and there is no doubt about the use of it." There was no written agreement by the plaintiff or, so far as the record shows, by his predecessor with either

the owner of the Gill or Collins property or their predecessors for the use of the alley in question.

The plaintiff testified that he lived diagonally across from the land in question since 1892, and ate at the Rosalie Music Hall, which was on the land before and during the World's Fair. When he purchased the land it was vacant, had a strong fence around it and the only entrance to it was through the alley by a gateway. Whiton had his horse pastured on the land. The old Music Hall and a small drug store were in that block. The alley was paved with macadam at least since 1892. After the plaintiff purchased the land he used it as a pasture for his horse. About the end of 1905 the plaintiff built on his land two six-flat buildings facing on Blackstone avenue, having the passageway, heretofore mentioned, in the rear of the buildings. A double door gateway opened to the alley. The plaintiff informed the tenants of his building that they might use the alley and they did so, and it was used both by vehicles and pedestrians. The tenants in the south tier of flats used the gateway mentioned to reach Fifty-seventh street through the alley. The plaintiff testified that he asked the permission of no one to use the alley, and that the only time he and his tenants refrained from using it was during the temporary period of construction work in progress in the erection of the building by Thomas A. Collins in 1923. The building which, previous to that time, stood on the site was torn down in order to permit the erection of the new building. Collins, at that time, told the plaintiff that he was going to build the overhead and connecting structure over the alley, and the plaintiff said it made no difference to him if it did not to Gill. It did not interfere with the plaintiff's use of the alley. The plaintiff testified that nothing was said by Collins at that time about the plaintiff's use of the alley, and that the plaintiff continued to use it. In 1925 and 1926 the plaintiff built his garage on the strip of land abutting the alley. When he was building the garage, the plaintiff

testified that Collins said, "Build that fence so they can't get through." Collins was then referring to a small fence two or three feet in height between the southeast corner of the plaintiff's garage and the northwest corner of Gill's garage, the purpose being to keep persons from the south of the alley going by a short cut from that direction to the alley. The plaintiff testified that he thought he had the right and acted as if he had the right to use the alley.

On April 20, 1935, Mary A. Collins wrote to the plaintiff informing him that he would have to discontinue the use of the alley as a thoroughfare unless he signed a lease for its use. The plaintiff did not reply to the letter, and on May 8, following, T. A. Collins, as agent for his daughter Mary, wrote the plaintiff calling his attention to the previous letter by his daughter and advising him that if something was not done soon his daughter would build a fence around the property. The plaintiff testified that this was the first time his right to use the alley had ever been disputed. He further testified that he had a sign two feet by twenty inches painted, on which was inscribed the information that the property was a private drive and contained a warning that no parking was allowed and that this sign was attached to the wall of the building adjacent to the alley, where it remained for years.

The plaintiff testified that one of Collins' tenants parked an automobile on Collins' lot which caused no inconvenience to anyone who used the alley, but subsequently other of his tenants parked double with the first automobile. This practice was objected to both by Collins and the plaintiff, and the plaintiff had called police officers at different times to have the automobiles removed.

Roy D. Keehn, Jr., testified that he resided in the apartment building owned by the plaintiff between 1910 and 1925; that the tenants of the building during that time used the alley in question. Frank Hermans testified that he was a janitor of the plaintiff's apartment building and had re-

sided there seventeen years; that during the time the witness was there the tenants of the building used the alley.

On behalf of the defendants Thomas A. Collins, also referred to as T. A. Collins, testified that Mary and Helen Collins, (the appellants) are his daughters; that he acquired title to the property in question on December 30, 1921; that there was no reservation in the deed in favor of the plaintiff. The witness testified that he began construction of the building on his land in the fall of 1922. He discussed the plans of the building with the plaintiff and they were both satisfied with them, but nothing was then said about the right of the plaintiff to use the alley; that after the plaintiff built his garage the witness asked the plaintiff how he put it in, and the plaintiff said to him, "Tom, you don't mind me driving in?" and the witness replied, "I guess I don't, Judge," but nothing was said which indicated that the plaintiff had asserted a right to the use of the alley before the garage was built. The witness explained that the reason he wrote to the plaintiff (apparently meaning the letter of May 8, 1935,) was that the tenants of the plaintiff were telephoning to him or his daughters about trucks blocking the alley and interfering with its use, but testified that he, Collins, never had any agreement with the plaintiff about such use.

The witness denied that the plaintiff had ever put up a sign stating that the alley was a private driveway, but that he, the witness, had put up such a sign, first upon the side wall and subsequently in front, where it could be more readily seen. The witness testified that he had paid taxes on the alley ever since he obtained the property and that the plaintiff drove in and out and cleaned his automobile in the alley. The witness testified that when he purchased the property there was a fence on the plaintiff's lot line, one part extending east and another part extending south, but that there was no gate in the fence when the witness went there, though he admitted there could have been one

there previously, as he never went to the plaintiff's yard; that he had seen persons jump over the fence, including the plaintiff's janitor, who had also worked for the witness.

By additional evidence a photograph, which the plaintiff testified was taken in 1922 from the rear of one of the plaintiff's apartment buildings, showed a gate opening to the alley in question. The evidence also shows that Chandler (whom the plaintiff had questioned about the use of the alley) was president of the Rosalie Music Hall Corporation at one time, but that corporation had quit-claimed its interest in the Collins' property in 1900, while the conversation between the plaintiff and Chandler was in 1904, when the Music Hall company no-longer had an interest in the land. The plaintiff testified that in offering that evidence he was simply showing the fact of how he gained the impression that he had a right to use the alley in question. Chandler was known in the neighborhood as having been president of the corporation when it had the fee to the alley, and Whiton had told the plaintiff he could learn about the alley from Chandler.

Whether there was adverse use of the alley under a claim of right for a period of twenty years, or the use of the alley was only permissive, is almost wholly a question of fact. (*Bald* v. *Nuernberger,* 267 Ill. 616; *Carroll* v. *Rabberman,* 240 id. 450.) To establish an easement in the land of another for a private right of way to and from adjoining property requires proof of the existence of the same elements necessary in the establishment of a public highway over private property by prescription. (*Parker* v. *Rosenberg,* 317 Ill. 511; *Schmidt* v. *Brown,* 226 id. 590.) The use must be adverse, uninterrupted, exclusive, continuous and under a claim of right. Exclusive use, however, does not mean that no one may or does use the way except the claimant of the easement. It means no more than that his right to do so does not depend on a like right in others, and it does not mean that the claim is necessarily

well founded. It need only be a claim of right. (*Look* v. *Bruninga,* 348 Ill. 183; *Schmidt* v. *Brown, supra.*) The burden of establishing a prescriptive right rests on the party pleading it. (*Waller* v. *Hildebrecht,* 295 Ill. 116.) Where a way has been used openly, uninterruptedly, continuously and exclusively for more than a period of twenty years, the origin of the way not being shown, there is a presumption of a right or grant from the long acquiescence of the party upon whose land the way is located. This presumption of a grant or adverse right is *prima facie* merely and may be rebutted. In the absence of evidence tending to show that such long-continued use of the way may be referred to a license or other special indulgence, which is either revocable or terminable, the conclusion is, that it has grown out of a grant by the owner of the land, and has been exercised under a title thus derived. The law favors this conclusion, because it will not presume any man's act to be illegal. It is also reasonable to suppose that the owner of the land would not have acquiesced in such enjoyment for so long a period, when it was his interest to have interrupted it, unless he felt conscious that the party enjoying it had a right and a title to it that could not be defeated. Because it can work no injustice to anyone, except to him who has been guilty of great negligence, public policy and convenience require that this presumption should prevail in order to promote the public peace and quiet claims of possession. (1 Jones Com. on Evidence, (2d ed.) sec. 307.) The facts to admit of such presumption, however, are not presumed but must be established by the greater weight of the evidence. (*Bontz* v. *Stear,* 285 Ill. 599; *Gilfoy* v. *Randall,* 274 id. 128.) Mere permission to use land cannot ripen into a prescriptive right, regardless of the length of time such permissive use is enjoyed. *Bontz* v. *Stear, supra; Waller* v. *Hildebrecht, supra.*

The substance of the evidence has been set forth. Without repeating the testimony it shows specific conversations,

previous to the present defendants' ownership of the land, relating to the right of the plaintiff to use the alley, if he should purchase the property. There was testimony that the alley had been macadamized as far back as 1892. There was an agreement of record by others than the plaintiff for the use of the land "for free and unobstructed passage" of the parties in 1885, and according to the plaintiff's testimony it was stated to him that the alley was made "years and years ago." The plaintiff purchased the property adjacent to the alley and he and his tenants used the alley continuously from that time to the present. The gate opening from the plaintiff's property to the alley antedated the defendants' purchase of their land. The gate was apparently large enough to admit vehicles, as the original was a "big gateway," and the one built by the plaintiff was a "double door gateway." The building of the gate by the plaintiff for the purpose of access to and egress from his premises was an indication to the public of his claim to the right to use the alley. It was used by vans, delivery trucks or wagons and for foot passage. While the witness Collins testified that he did not know of the plaintiff's previous use of the alley, obviously he was not in position to know that fact as well as those who lived on the premises owned by the plaintiff. The chancellor was in a better position to judge of the credibility of the testimony than is this court. The preponderance of the evidence is that the plaintiff asserted the right to use the alley in question for more than the statutory period. The presumption of the plaintiff's adverse possession and right to use the alley was not overcome by the voluntary temporary relinquishment of its use during the time the building on the Collins' property was being constructed. 1 Jones Com. on Evidence, (2d ed.) sec. 314.

It is contended, however, that the court erred in admitting in evidence conversations between the plaintiff and others, who were not in title to the Collins' property, and

which conversations were out of the presence of and not acquiesced in by the then owner of the Collins' property. Where long possession is relied upon to establish the right of a claimant to an easement the same strict rules of evidence are not required as where a claim is founded on an ordinary title. (1 Jones Com. on Evidence, (2d ed.) sec. 311.) The most usual character of evidence in such a case would be parol and not documentary. Conversations will be found in cases of this character, either accompanying agreements or in explanation of conditions which existed, which aid or tend to defeat the presumption, after twenty years, of the right to use the property or way. (*Schmidt* v. *Brown, supra; Parker* v. *Rosenberg, supra; Bontz* v. *Stear, supra; Look* v. *Bruninga, supra.*) The evidence was competent for the limited purpose of showing the character of the plaintiff's use of the alley, and there was no error in its admission.

The plaintiff's inquiries at the time he purchased were whether there was a right to his use of the alley. The evidence was in dispute as to Collins giving permission to the plaintiff to use the alley, when he, Collins, purchased, or at any time thereafter, though he or his daughter sought to terminate such use by the plaintiff in 1935. The evidence justified the conclusion of the chancellor that there had been adverse use of the alley by the plaintiff for more than twenty years before the defendants attempted to assert their right of possession to the exclusion of the plaintiff. The preponderance of the evidence is that the plaintiff did not seek to gain the permission of anyone to use the alley previous to or during the time of the ownership of the property by Collins and his daughters, but always insisted on his right to its use.

The decree of the superior court is affirmed.

*Decree affirmed.*