(No. 25994.—)

IRMA MONROE, Appellant, *vs.* GEORGE SHRAKE *et al.* Appellees.

*Opinion filed April 10, 1941.*

ARTHUR J. STEIDLEY, ROBERT I. PUGH, and JOHN J. BAKER, for appellant.

EUGENE BLAND, for appellees.

Mr. CHIEF JUSTICE GUNN delivered the opinion of the court:

Irma Monroe, appellant, filed a complaint in the circuit court of Shelby county asking for an injunction restrain-

ing appellees from going over or traveling across certain premises she now owns. George and Mary Shrake, two of the appellees, answered, alleging they have a roadway by prescription by virtue of continuous, open, adverse use under claim of right for a period of more than twenty years. The answer of appellee Sallie Turner, née Taylor, makes a like claim, and that she has a roadway of necessity by implied grant from appellant's predecessor in title. The chancellor found appellees acquired a roadway by prescription over appellant's premises, but that the proof did not sustain the contention of Sallie Turner that she has a roadway by reason of necessity. From a decree denying the injunction and dismissing the bill for want of equity, an appeal has been prosecuted to this court. No cross-appeal has been filed. A freehold is involved.

Appellant bought the premises described in the complaint in 1929. The premises are bounded on the north by two forty-acre tracts and the south end of an eighty-acre tract. The west tract is owned by George and Mary Shrake as tenants in common. The middle tract, directly east of and adjoining the Shrake land, is owned by Sallie Turner. On the west, appellant's lands are bounded by the Baltimore and Ohio Southwestern Railroad Company's track running northwest and southeast. To the south is a public highway along the north line of the south forty acres. On the east is another public highway which turns northwesterly through the northeast forty, crossing the north line thereof about the center. At the time appellant purchased her land, appellees were traveling across the premises to and from the public highway on the south and their homes on the tracts which adjoin appellant's premises on the north. The roadway is near the west line of the premises except that near the north end it forms a "Y," one branch of which leads to the Shrake home and the other to the Turner home. The record discloses that

the rights of George and Mary Shrake must be considered separate and apart from those of Sallie Turner.

George and Mary Shrake ground their claim to a prescriptive right-of-way across appellant's premises on possession and use of the roadway by them and their grantor, Jacob Shrake. The testimony shows that before Jacob Shrake traveled over the right-of-way, it was used for logging and hauling timber and, when so used, it was over a vacant, unoccupied and unenclosed part of the premises now owned by appellant. Jacob Shrake testified that he bought the land now owned by George and Mary Shrake in 1902 and held it until 1926, when he deeded it to them for a consideration. During the period he owned the land, Jacob Shrake continually used the road and worked it and put it in a passable condition. He testified that when he purchased the premises he "just went right ahead and used the road; nothing was said about it." At the time the roadway was used for logging there was a house, barn and orchard on the southeast portion of the premises now owned by appellant. The house and barn were later torn down or removed. It is not shown that they were ever occupied during the time Jacob Shrake used the roadway. Sallie Turner testified that in 1897 the premises were partly enclosed with a poor fence, with a gap at the south road, which was closed by a gate in 1900. The testimony shows there was a gate there intermittently since that time. George and Mary Shrake testified that they had used the same roadway and did some work on it after they purchased the land in 1926. They admitted signing a farm lease in 1929 for thirty-six acres of appellant's land and that in the lease a provision was included whereby they promised to pay $10 "for use of the roadway." A note signed by the Shrakes dated May 7, 1930, which recited "for use of roadway from March 1st 1930 to March 1st 1931," was introduced in evidence. In 1932, George

Shrake signed an agreement with appellant whereby he agreed to pay $5 for use of a right-of-way across appellant's premises. Under a provision therein the agreement was terminated by appellant. George and Mary Shrake claim the agreement was procured through fraud and misrepresentation, but George Shrake testified that he understood the agreement meant he was to pay $5 annual rent for the use of the roadway. This evidence, which is relied upon to establish a prescriptive right, is scarcely in dispute.

Appellant urges that George and Mary Shrake did not acquire a roadway by prescription because neither they nor their predecessor in title, Jacob Shrake, used the road under claim of right. The position of appellees is that the undisputed evidence shows that they and Jacob Shrake used the road for more than twenty years; that a *prima facie* presumption of a right or grant from the long acquiescence of the owner of the servient estate arises from such user; that, aside from any presumption, by working the road, they and Jacob Shrake used it under claim of right and thus they have acquired a prescriptive easement.

In order to establish a way by prescription, public or private, the use must be adverse, uninterrupted, exclusive, continuous and under a claim of right. (*Rush* v. *Collins,* 366 Ill. 307; *Schmidt* v. *Brown,* 226 id. 590; *Bontz* v. *Stear,* 285 id. 599.) From the record it appears the roadway first passed over the premises now owned by appellant when they were vacant, unoccupied and unenclosed. Use of vacant and unoccupied land is presumed to be permissive and not adverse. (*Parker* v. *Rosenberg,* 317 Ill. 511; *Illinois Central Railroad Co.* v. *Stewart,* 265 id. 35.) Therefore, the first use of the roadway is presumed to have been permissive only, and mere permissive use can never ripen into prescriptive right whatever length of time such permissive use is enjoyed. (*Rush* v. *Collins, supra; Bontz* v.

*Stear, supra.*) There is no showing in the record that this permissive use was ever changed into an adverse use by Jacob Shrake, or by appellees. Jacob Shrake testified that when he purchased the land the road was already there, nothing was said about its use and he "just used it." George and Mary Shrake argue that they and Jacob worked the road, and this is proof it was used under claim of right. Such up-keep does not, in itself, show a claim of right because it is consistent with permissive use. Even if the work on the road shows acquiescence on the part of the owner of the servient estate to the use, such acquiescence, alone, is not sufficient to establish a prescriptive easement. Acquiescence is always to be found in a permissive use. (*Bontz* v. *Stear, supra.*) One of the elements to establish a *prima facie* presumption of a right or grant from long acquiescence of the parties upon whose land the way is located is that the origin of the right-of-way is not shown. (*Rush* v. *Collins, supra.*) In the instant case, the origin of the way is shown, and its first use is presumed to be permissive. Long acquiescence and working the roadway are each consistent with permissive use. The origin of the use in this case was presumptively permissive, and thus the facts do not admit of a presumption that the use was adverse or under a claim of right. The record is devoid of evidence that Jacob Shrake or appellees claimed adversely or under claim of right for the requisite period of time. Such a claim of right is one of the requisite elements of a prescriptive right. The burden of establishing such a right rests on the party pleading it. (*Rush* v. *Collins, supra.*) To obtain a prescriptive right all the elements necessary to establish such right must be distinctly and clearly proved. (*Parker* v. *Rosenberg, supra.*) The Shrakes did not meet that burden. The lease, and the promissory note of the Shrakes obligating them to pay rent for the use of the roadway, are wholly inconsistent

with a user under the claim of right. The finding of the chancellor that they had acquired a right-of-way by prescription is not sustained by the evidence and was error.

Sallie Turner, one of appellees, claimed a prescriptive right to use the roadway and an easement of necessity by implied grant. She purchased the premises she now occupies and which lie directly north of appellant's lands, from B. W. Kerr on May 1, 1918. At the time of the purchase, B. W. Kerr owned a tract, including the lands now owned by Sallie Turner and appellant. The land conveyed to Sallie Turner was surrounded by lands of others on three sides and by the premises of Kerr on the south. By a separate instrument of the same date Kerr granted Sallie Turner an easement running along the north edge of the premises now owned by appellant to the public highway on the east side thereof. This grant was accepted, but not recorded by her until November 10, 1939. From the testimony it appears this easement lies across very rough land. Carl Dunaway, a witness who owns the premises directly east of those of Sallie Turner, testified he permitted her to travel across his land to the public highway on the east during several months of the year. The evidence is conflicting as to the condition of the road and whether it is passable with a car. The distance from the premises owned by Sallie Turner to the public highway on the east is approximately one eighth of a mile and is much shorter than that she now travels across appellant's premises about one-half a mile to the south highway. It also appears from the evidence that Sallie Turner used the road across appellant's land to the south continuously since her purchase in 1918. On March 25, 1929, appellant leased to her twenty-four acres of land for one year and included in the lease a provision that lessee was to "pay $10.00 for use of the road—a note for $10.00 due November 1, 1929, being given." Appellant introduced in evidence a promissory note for the principal sum of $10

signed by Sallie Turner and reciting "for use of roadway." In 1932, another written agreement was executed by appellant and Sallie Turner granting a private right-of-way ·to her across appellant's lands at a place or places to be designated by appellant and for which Sallie Turner agreed to pay the sum of $5 each year. The agreement was terminable on thirty-days' notice and was so terminated by appellant. Sallie Turner testified that appellant's agent told her the contract did not amount to anything, and that after the agent had departed she read it over. The evidence also shows she made some payments pursuant to the contract. No roadway was ever designated as the contract provided, and Sallie Turner continued to use the same way she used before the execution of the agreement.

It is insisted that Sallie Turner has a prescriptive right to the roadway arising out of her use which began in 1918 and continued until 1939. The record shows she traveled over the road continuously for the requisite period, but it does not show that such use was adverse and under claim of right. She admitted she signed the lease and contract by which she obligated herself to pay for use of the roadway. Some payments were actually made under both agreements. The contention that the contract was procured by false representations and fraud is wholly unsubstantiated by the evidence. The signing of the lease, and the agreement and payments thereunder are clearly incompatible with any adverse user or claim of right on her part. In fact, they show that use of the roadway, at least after 1929, was considered by both appellant and Sallie Turner to be permissive and not adverse. The evidence does not show a prescriptive right.

It is also urged that Sallie Turner has an easement by implied grant because the road is reasonably necessary and convenient for the use of her premises. B. W. Kerr, the common owner, on the same date he deeded the premises to Sallie Turner, granted an easement to her across the

northern edge of his land now owned by appellant to the highway on the east. She contends that the grant of the easement was given after the deed. The two instruments bear the same date and the record does not show any reason why they should not be viewed together. This easement, which Sallie Turner accepted, manifests an intention that she use the way therein described and no other way across the grantor's premises. The specific grant of a way to Sallie Turner by her grantor and her acceptance of it refutes any implication of an easement of necessity from the deed over the route in controversy. The finding of the chancellor that she had no right of way by necessity across appellant's premises was correct.

The decree of the circuit court of Shelby county is reversed and the cause is remanded, with directions to enter a decree in conformity with the prayer of the amended complaint. *Reversed and remanded, with directions.*