BARNEY A. WALTERS *et al.*, Appellees, *vs.* LESTER C. GADDE *et al.*, Appellants.

*Opinion filed May 23, 1945—Rehearing denied September 13, 1945.*

L. C. MILLER, of Rockford, and ALBERT S. O'SULLI-VAN, of Belvidere, for appellants.

HALL & HALL, of Rockford, for appellees.

Mr. JUSTICE GUNN delivered the opinion of the court:

Appellees, Barney A. Walters and Louise F. Walters, his wife, and appellants, Lester C. Gadde and Adelaide Gadde, his wife, owned adjoining lots in the town of Belvidere, Illinois. On both premises was a residence occupied by the respective parties. The houses faced the east upon Pearl street, which ran north and south. Be-

tween the premises was a gravel driveway running west from Pearl street to almost the rear of the respective lots. The property line between the two lots was covered by this driveway.

April 30, 1942, appellant Lester C. Gadde placed in approximately the center of the driveway twelve substantial posts extending from the front of the properties on Pearl street to within a few feet of the west property line. This prevented appellees' from having ingress and egress to their property over the driveway. Appellees brought suit in the circuit court of Boone county to establish an easement in the driveway, and to require appellants to restore it to the same condition it had been in before it was so obstructed by appellants, and in addition to be given an easement in a part of the appellant's lot, being a tract resembling the segment of a circle, about four feet and six inches north and south at the widest point, and approximately twenty-five feet along the south side of the driveway. Issues were formed, evidence taken and a decree entered by the circuit court granting the prayer of appellees' complaint, and requiring appellants to restore the driveway and the turn-about space, and awarding damages in the sum of $267.25. Appellants come to this court on direct appeal because a freehold is involved.

The facts are substantially as follows: Prior to 1890, George Ames owned the two pieces of property above specified, as well as some additional land to the south. He had a residence upon the property, and a driveway from Pearl street along the same course as that here involved was laid out to the west for approximately 128 feet, and then turned to the south some distance, where the barn of George Ames was located. August 13, 1890, George Ames and his wife conveyed to David C. Woolverton, the same property now owned by appellees, and the south line of this property lay approximately in the center of the improved gravel or cinder driveway existing at that time.

A short time thereafter Woolverton built a residence on the premises, which is the same building, with some changes, now occupied by appellees. This property was conveyed a number of times by the same description and occupied by different persons, and during all of the time up to April 30, 1942, the driveway was used for acess to and from the street to the rear end of the premises where appellees had located a garage to the north side of the lot. By mesne conveyance the plaintiffs obtained title to the property in 1938, and immediately commenced the use of the driveway, and so continued the use until deprived thereof by the actions of appellants. Appellants acquired title to the adjoining lot in 1939. During the entire period, from August 13, 1890, to date, the adjoining property owners had used the driveway without opposition or protest upon the part of anybody, or upon the part of the adjoining owners.

The small segment of ground to the south of the driveway referred to as the turn-about space has a different history. Originally there was no barn upon the premises of appellees, and no evidence shows that a turn-about space was necessary for use of the premises. George Ames, the original owner, had a barn on his part of the premises to the south of the lot now owned by Gadde, and about 128 feet from the street the driveway turned to the south to reach it. In 1920 or 1921 a garage was built upon the premises owned by Walters, and, instead of facing towards Pearl street, it was located upon the north side of the lot and faced the south. In front of the garage was a concrete apron about 15½ feet east and west and 24 feet north and south, which came almost down to the gravel driveway. When trucks or automobiles were backed out of the garage, the front wheels were turned so that the rear portion would go to the west, and when straightened out would enable the car to drive out to the east. In doing this backing from the apron and turning the rear to the

west, the rear wheels apparently go south on the traveled part of the driveway, and, being on a turn, formed the segment of a circle about 4½ feet wide at the deepest penetration of appellants' lot. It is claimed an easement was acquired in this turn-about space the same as in the driveway space. The facts are different with respect to each and necessarily will receive separate treatment.

In 1890 the entire tract of land was owned by George Ames. He built this driveway. It was open to the observation of all persons. He sold one of the lots, and, located on its southern side and occupying a portion of the lot, was a driveway. The driveway also occupied a part of the lot adjoining to the south. There was nothing in the deed of conveyance referring to a driveway, but it was present and observable to everyone who could see. The plaintiffs claim an easement acquired not only by uninterrupted user for over twenty years but also by implied grant. In our view it will only be necessary to consider the last claim.

The rule applied to this case is well stated in *Bihss* v. *Sabolis,* 322 Ill. 350, where it is said, with respect to an easement created by a party who owned the entire tract at the time the use was created: "No easement exists so long as there is a unity of ownership, because the owner of the whole may at any time rearrange the qualities of the several parts, but the moment a severance occurs by the sale of a part, the right of the owner to re-distribute the properties of the respective portions ceases and easements or servitudes are created corresponding to the benefits and burdens mutually existing at the time of the sale. This is not a rule for the benefit of purchasers, only, but is entirely reciprocal. * * * The parties are presumed to contract in reference to the condition of the property at the time of the sale, and neither has a right by altering arrangements then openly existing, to change materially the relative value of the respective parts. [Citations]"

The first statement of the °rule called to our attention is in *Cihak* v. *Klekr*, 117 Ill. 643, where we held that when the owner of two tenements, or of an entire estate, has arranged and adapted these so that one tenement, or one portion of the estate, derives a benefit and advantage from the other, of a permanent, open and visible character, and then sells the same, the purchaser takes the tenement, or portion sold, with all the benefits and burdens which appear at the time of sale to belong to it. It is not necessary in such case that the easement claimed by the grantee be really necessary for the enjoyment of the estate granted. It is sufficient · if it is highly convenient and beneficial. This principle has been followed in *Fossum* v. *Stark*, 302 Ill. 99, and *Fels* v. *Arends*, 328 Ill. 38, and said to be a settled .principle in *Gerstley* v. *Globe Wernicke Co.* 340 Ill. 270. The purchaser of property takes it with this servitude upon it, if the marks of the burden are open and visible. *Bihss* v. *Sabolis*, 322 Ill. .350; *Hoepker* v. *Hoepker*, 309 Ill. 407.

The circuit court made a finding that the driveway in question has been used continuously and uninterruptedly for the benefit of the adjoining properties by the owners and their grantees from August 13, 1890, down to April 30, 1942. The finding of the circuit court that an easement in the driveway between the two lots was created by implication, when the property now owned by appellees was conveyed to Woolverton, is amply supported by the evidence.

The decree of the trial court also gave an easement to appellees in the turn-about space. There was no turn-about space shown by the evidence at the time George Ames conveyed the property to Woolverton. Frank J. Woolverton, a son of David C. Woolverton, testified he "did not remember George Ames ever had a horse or buggy, or ever drove a horse, and when my father lived

there they had no horse or buggy. They had no barn on their place." It would appear from this there was no occasion at that time for the first purchaser from Ames to have any turn-about space, since he had no barn for the use of horses. Plaintiff Walters testified that when he bought the lot the driveway extended right straight out from the street, extended straight west and was right straight out from the sidewalk; that his house was on the north side of it and appellants' house was on the south side. He also testified that when he backed his car out of his garage he cut around to the west and used a part of appellants' lot known as the turn-about space. Mrs. Rodgers, widow of Frank Rodgers who owned appellees' property from 1919 to 1933, testified that "when we left the garage we backed and turned west while backing, and drove out to Pearl street." It is apparent from the location of the Walters garage, with the concrete driveway in front of it, that there was at least 25 feet between the south door of the garage and the north line of the gravel driveway; and it is also apparent that by turning the front wheels and directing the back end of the automobile to the west it might at times occupy the so-called turn-about space, or it might (although there is no evidence in the record of this fact) likewise have used some portion of the Walters' premises to the north of the drive.

We take judicial notice of the fact that, in backing a vehicle, especially around a curve, one cannot place the wheels with the same accuracy that one can in driving forward. There was, however, ample space, as shown by the plat of this property, for the appellees to turn their cars around by backing entirely upon their own property or upon the drive, without interference or trespassing upon the adjoining property. The only claim upon which an easement can be based in the property of appellants would be by prescriptive use for a period of twenty years

or more. To enable a person to establish a way by prescription, the use must be adverse, uninterrupted, exclusive, continuous and under claim of right. *Rush* v. *Collins,* 366 Ill. 307; *Schmidt* v. *Brown,* 226 Ill. 590; *Monroe* v. *Shrake,* 376 Ill. 253.

The evidence in this case wholly fails to establish any claim of right and does not, in our opinion, furnish any evidence of elements to establish prescription. It is not shown when the right commenced. It is argued it commenced when the garage was built by Rodgers in 1921. There is nothing to show that anything occurred except the possibility that the wheels on one side of an automobile might cut across the driveway. There is certainly no evidence showing that the owner of the lot to the north had any exclusive use of this segment of the property south of the driveway. Appellees have offered in evidence a photograph showing the outer edge of the circle of the turn-about space marked by some stones set in the perimeter as an outside boundary, but the evidence shows these were inserted or placed within the last five years.

When a title to property is acquired or an easement in property is obtained from another by prescription, all of the elements necessary to comply with the law must be established by the evidence. In this case we do not think that the evidence shows that any person in the chain of title had the continuous and exclusive right to use uninterruptedly the portion south of the driveway known as the turn-about space. Neither is it shown there ever was a claim of right to use any such specified space. The fact the original owner had a barn off to the south and turned in that direction from the gravel driveway does not establish that a subsequent grantee to the north of the driveway had a right to use something that was not connected with the use of the adjoining property. The evidence tends to show an occasional use of the turn-about space, or an accidental use by getting off of the driveway while backing

the vehicle, instead of an intentional, uninterrupted and continuous use of the space under claim of right as a necessary or convenient means of heading the vehicle towards the street for the purpose of driving out. The proof is entirely lacking with respect to the continuous use for this purpose. On the other hand, as to the use of the driveway itself, the proof is ample and conclusive to establish an easement by implication.

Appellants have cited a number of cases in which it is held that permissive use of another's property does not ripen into an easement. The principle of these cases is not applicable here to the driveway because it falls within the doctrine of an implied grant, which is brought about by the act of the grantor and the convenience or necessity of the grantee and not because of prescriptive use. We think the objection made by appellants as to the turn-about space is well taken. It is our opinion the circuit court erred in giving to appellees an easement in the turn-about space. We are convinced it was correct in allowing an easement in the driveway space, and in the allowance of damages.

In the decree the circuit judge has set out a number of arguments and citations as applicable in sustaining his decision, which involve grounds other than those herein mentioned. In reaching our conclusion it is not necessary to pass upon such other matters.

The decree of the circuit court is accordingly affirmed as to that portion granting appellees an easement in the driveway and the amount of damages allowed, and reversed as to the allowance of an easement in the turn-about space to the south of the driveway. The costs in this court are to be equally divided between the appellants and appellees.

*Affirmed in part, and reversed in part.*