JOHN J. SCHULTZ *et al.*, Plaintiffs-Appellees, v. WILLIAM KANT, Defendant-Appellant.

Second District No. 2—85—0608

Opinion filed October 10, 1986.—Rehearing denied November 12, 1986.

566

David W. Badger, of Badger & Badger, of Dixon, for appellant.

Daniel A. Fish, of Law Offices of Henry Sherwood Dixon, of Dixon, for appellees.

JUSTICE HOPF delivered the opinion of the court:

Plaintiffs, John and Irene Schultz, filed a complaint asking the court to declare an easement by prescription over and across property owned by defendant, William Kant. Defendant denied plaintiffs had established a prescriptive easement. Subsequent to a bench trial of the matter, the trial court entered a lengthy judgment declaring the plaintiffs owners of a right-of-way easement by prescription appurtenant to plaintiffs' land and over and across defendant's property. Additionally, the court ordered the defendant to restore the easement to its prior condition, to remove any obstructions or encroachments on the easement, and to refrain from interfering with the plaintiffs' use of the easement. Defendant filed a post-trial motion, which was denied. This appeal followed.

In this court defendant contends: (1) that the evidence did not support a claim of a prescriptive easement, and (2) that, if a prescriptive easement was established, the use of the easement must be restricted to that use which occurred during the entire prescriptive period.

Plaintiffs are owners of approximately 160 acres of land in Amboy Township, Lee County (the Schultz property). Defendant owns a tract of land of approximately 160 acres, adjacent to and immediately west of plaintiffs' land (the Kant property). The two properties are separated by a fence. To the west of defendant's property is Morgan

Road. The Green River bisects both the plaintiffs' and defendant's property with plaintiffs owning approximately 27 acres of land south of the river. The river, where it crosses plaintiffs' and defendant's property, is located within the Maple Grove Drainage District and is approximately 50 feet in width with steep banks and between 2 and 10 feet in depth, depending upon the area of the river, the season, and the rainfall.

In 1952 plaintiffs began renting the property, which they subsequently purchased in 1973 from the heirs of Ned and Howard Green. From 1952 to 1954 the plaintiffs rented their property south of the Green River to Weldon Conderman to pasture cattle. From 1954 to 1976 the plaintiffs used that same area of land as pasture. From 1976 to 1983 the plaintiffs rented that same property to Howard Hageman, a brother-in-law of plaintiff John Schultz, who used the property for recreation and a camp and trailer site.

From 1954 to 1984 plaintiffs traveled from Morgan Road east across defendant's property immediately south of and adjacent to the Green River to their own 27-acre parcel of land south of the Green River by means of a single-lane gravel and dirt roadway. Plaintiffs used the roadway as often as the need arose for purposes of checking the field tile south of the river, maintaining and repairing fences on the southerly 27 acres, and checking cattle pastured on that acreage. Additionally, plaintiffs' children used this parcel of land for fishing, hunting, riding recreational vehicles, and general recreation. Testimony at trial by John Schultz and his son indicated that the roadway constituted the only means of access to their property south of the

Green River. The testimony also showed that plaintiffs never sought permission from defendant or his predecessor in title, Beulah True, to use the roadway.

The Kant property was farmed by Weldon Conderman, as a tenant of Beulah True, from 1952 to 1964. From 1964 to 1982 defendant rented the property from Beulah True, and from 1982 to 1983 J. R. Lyons rented it. In 1984 defendant purchased the property. Defendant's property south of the Green River consisted of a nine-acre tillable field along Morgan Road and another parcel of land to the east, which could be cultivated but seldom produced a decent crop because of the swampy condition of the land.

In 1964 the Maple Grove Drainage District hired a contractor to dredge and straighten the banks of the Green River where it passed through plaintiffs' and defendant's property. The contractor deposited sand and gravel from the river bottom onto the roadway. In 1977 Howard Hageman had gravel hauled onto the roadway and placed in the low spots. Hageman never sought defendant's permission to take this action.

In April 1984 defendant destroyed the roadway by plowing it under to utilize more land for growing crops. As a result, plaintiffs brought an action for easement by prescription over the destroyed roadway. After a bench trial the trial court found that the plaintiffs' use of the roadway was adverse, exclusive, continuous and uninterrupted, and under a claim of right for a period of more than 20 years. Additionally, the court found that plaintiffs' use of the roadway was with the knowledge and acquiescence of defendant and his predecessors in interest but without their permission. Accordingly, the court found that the plaintiffs owned a right-of-way easement by prescription 12 feet in width, immediately south of and adjacent to Green River and extending from Morgan Road easterly across the defendant's property to the plaintiffs' property.

■ ■ It is well established that to acquire an easement by prescription a claimant must show that the use of the land was adverse, exclusive, continuous and uninterrupted, and under claim of right for a period of at least 20 years. (*Healy v. Roberts* (1982), 109 Ill. App. 3d 577, 579, 440 N.E.2d 647.) The party claiming the prescriptive right bears the burden of proving its existence (*Light v. Steward* (1984), 128 Ill. App. 3d 587, 596, 470 N.E.2d 1180), and the establishment of a prescriptive easement is almost always a question of fact, especially with regard to whether a use is adverse or permissive (*Keck v. Scharf* (1980), 80 Ill. App. 3d 832, 835, 400 N.E.2d 503). In the instant case, the only element concerning proof of a prescriptive easement which

defendant puts at issue in his brief is whether plaintiffs' use of the roadway over defendant's land was adverse or permissive.

■■ Where it is shown that a way has been used openly, uninterruptedly, continuously, and exclusively for more than 20 years and the origin of the way is not shown, a rebuttable presumption of an adverse right or grant is created from the long acquiescence of the party upon whose land the way is located. (*Leesch v. Krause* (1946), 393 Ill. 124, 129, 65 N.E.2d 370.) However, the facts to admit of such presumption are not presumed but must be established by the greater weight of the evidence. (*Rush v. Collins* (1937), 366 Ill. 307, 315, 8 N.E.2d 659.) Here, defendant claims that the plaintiffs failed to prove an open use of the roadway and also failed to establish that no origin of the way was shown. These are the only elements for a presumption of a grant or adverse right which defendant challenges in this appeal. Accordingly, we assume that defendant does not disagree with the trial court's findings that plaintiffs' use of the roadway was uninterrupted, continuous, and exclusive.

■■ ■ Defendant asserts that to prove open use of the roadway in question plaintiffs had to show that the manner, character, and frequency of the use and the situation of the parties were such that knowledge of an adverse claim by the defendant may be inferred. Defendant maintains that plaintiffs' use never rose to a level where it could be considered open so that defendant's knowledge of the use could be inferred. We believe the evidence does not support this claim.

Defendant's testimony evidenced that he was extremely familiar with the areas surrounding his property and plaintiffs,' having lived, worked, and farmed in the area since 1937. Additionally, defendant testified that, as a commissioner of the Maple Grove Drainage District, he had walked the Green River, had traveled down it by boat on several occasions, and even had flown over it. On these occasions, which occurred at least annually, defendant would tour the entire length of the Green River. As plaintiffs point out to this court, such familiarity with the area surrounding the Green River raises an inference that defendant knew of the existence of the roadway from Morgan Road along the south bank of the river across defendant's land to plaintiffs' property and that he also knew plaintiffs had no other means of access to their 27 acres south of the river other than over the roadway.

Further, testimony by several disinterested residents of the area indicated that they knew of no other access to plaintiffs' southerly acreage other than over the roadway to which the plaintiffs claimed an easement. In light of this knowledge by these disinterested persons, it is unreasonable to believe that defendant did not also know plaintiffs

had to use defendant's roadway to check on the cattle or fences located on the southernmost part of their farm.

Moreover, the evidence showed that defendant possessed actual, as well as inferred, knowledge of plaintiffs' use of the roadway. Both plaintiffs and their son, John, testified that, while using the roadway, they waved to defendant when he was working in his fields and that he would wave back. Defendant, however, denied ever seeing the plaintiffs or any members of their family using the roadway. After considering the defendant's testimony and that of the other witnesses, the trial judge determined that defendant did have knowledge of plaintiffs' use of the roadway. Since the trial judge, as trier of fact, is in a superior position to hear and weigh the evidence and determine the credibility and demeanor of witnesses, this court will not reverse his judgment unless that judgment is clearly and palpably against the manifest weight of the evidence. (*In re Estate of Elson* (1983), 120 Ill. App. 3d 649, 655, 458 N.E.2d 637.) Such is not the case here.

Defendant also contends that for a presumption of adverse right to arise there must be no evidence to show the origin of the way. (*Rita Sales Corp. v. Bartlett* (1970), 129 Ill. App. 2d 45, 53, 263 N.E.2d 356.) Defendant maintains that the roadway was created by the action of the Maple Grove Drainage District in dredging the Green River and depositing the dredged material on the southerly bank. However, the evidence showed that the roadway was in existence prior to that time and that this action was more in the nature of improving the roadway. Additionally, testimony by various disinterested parties established that the roadway had been in existence for many, many years. One witness, Florence Arend, testified that she and her husband had traveled the roadway as long ago as the 1930's. Based on the evidence presented to the trial court, we believe the first use of the way was not shown and, therefore, the facts admitted of a presumption that plaintiffs' use was adverse and not permissive.

The defendant additionally contends, however, that the use of the roadway was permissive because the land was vacant and unenclosed at the time the plaintiffs first began using it. Defendant's reliance on *Monroe v. Shrake* (1941) 376 Ill. 253, 33 N.E.2d 459, and *Waller v. Hildebrecht* (1920), 295 Ill. 116, 128 N.E. 807, to argue that property is not enclosed if the access to the roadway in question is not controlled by a regularly used gate is misplaced, as in neither case was the court's decision that use of a roadway was permissive based on whether the land was enclosed by a gate at the location for access to a public road.

In the case at bar, the evidence showed that prior to 1964 defend-

ant's property was enclosed on the west side next to Morgan Road by a fence. In 1964 defendant began removing this fence. However, this action by defendant did not have the effect of changing plaintiffs' adverse use of the roadway, which began in 1954 when the property was enclosed, to a permissive use.

Also, defendant could not prove a permissive use based on his claim that the land was vacant, as evidenced by the fact that defendant and his predecessors throughout the years had planted, cared for, and harvested crops on a portion of defendant's property south of Green River. Vacant is defined as "being without contents." (Webster's Third New International Dictionary 2527 (1981).) Clearly, the presence of crops on a portion of defendant's acreage south of the Green River indicates defendant's southerly land was not vacant. Defendant's contention, therefore, that plaintiffs' use of the roadway in question was permissive because the land over which it passed was vacant and unenclosed, must fail.

Additionally, defendant's argument that he is entitled to the presumption of permissive use which arises out of neighborly courtesy must also fail. The fact that plaintiffs and defendant were on "pretty good terms" and "never had any problems" does not constitute sufficient evidence to support the presumption. As in *Healy v. Roberts* (1982), 109 Ill. App. 3d 577, 440 N.E.2d 647, the evidence did not establish the nature of the relationship between the parties as anything other than that they were friendly and cooperative. It did not establish permission by defendant to plaintiffs to use the roadway for their own purposes due to their neighborly relationship.

Nevertheless, even if the presumption of permission based on neighborly courtesy arose, there was sufficient evidence of adverse use to overcome the presumption. The evidence established that any neighborly relationship could not have begun until 1964 when defendant began to farm the Kant property. However, plaintiffs established that their adverse use began in 1954. Also, testimony showed that plaintiffs never asked for nor offered to pay for permission to use the roadway but always claimed a right to use it. (See *Burrows v. Dintlemann* (1976), 41 Ill. App. 3d 83, 86, 353 N.E.2d 708.) Thus defendant's reaction, or inaction, to plaintiffs' use amounted to acquiescence and not permission.

■ Finally, defendant argues that the trial court erred in finding that the roadway was the only means of access to plaintiffs' 27 acres south of the Green River and therefore was necessary for its beneficial enjoyment. This appears to be a correct contention, as the plaintiffs' were aware when they bought their property that the Green

River and the Maple Grove Drainage District divided the property. No evidence was presented to show why plaintiffs did not erect a bridge across the river to allow motor vehicles access to the acreage south of the river since the banks were too steep for such vehicles. Instead, plaintiffs elected to use the roadway from Morgan Road across defendant's property south of the river to reach their own southerly acreage, and sufficient evidence existed, as discussed elsewhere in this opinion, to establish that this use resulted in a prescriptive easement. Consequently, the court's consideration of necessity in this case constituted nothing more than harmless error.

We conclude that the trial court's judgment that plaintiffs had proved an easement by prescription by a preponderance of the evidence was correct.

■■ ■ We next consider defendant's contention that, if a prescriptive easement was established, the use of the easement must be restricted to that use which occurred during the entire prescriptive period. It is defendant's position that the trial court should have restricted plaintiffs' use of the easement to no more than the 5 to 10 times per year the court found plaintiffs used the easement and for the purposes for which the easement was originally used, *i.e.*, checking tile, repairing fences, and checking on cattle. According to defendant, the trial court acted improperly in refusing, upon application of defendant's post-trial motion, to limit the easement to the character, frequency, and purpose made of the easement during the prescriptive period.

The common and ordinary use establishing the right to an easement by prescription limits and qualifies it so that it cannot be given to different uses and purposes. (*Sell v. Finke* (1920), 295 Ill. 470, 479, 129 N.E. 90.) Although the plaintiffs, as owners of the easement, are allowed to do such things in the way of repairs as to make the easement reasonably usable (295 Ill. 470, 479, 129 N.E. 90), they cannot make material alterations in the character of the easement so as to place a greater burden on the defendant's property or to interfere with the use and enjoyment of defendant's property by the defendant. (*Triplett v. Beuckman* (1976), 40 Ill. App. 3d 379, 382, 352 N.E.2d 458.) Such limitations are consistent with the theory of the prescriptive easement wherein it is presumed that when an individual knows of the use of his land by another and acquiesces, as was shown in this instance, he recognized the claim of the other to make that use of the land and, in effect, actually granted the easement. *Ruck v. Midwest Hunting & Fishing Club* (1968), 104 Ill. App. 2d 185, 189-90, 243 N.E.2d 834.

Defendant maintains that by refusing to limit the scope and extent of the easement, the trial court has bound the Kant property owners to accept any future usage which the Schultz property owners wish to make of the easement even though the defendant has not acquiesced to these future usages. If the plaintiffs' use of the roadway or the use by any future owners of the Schultz property were to increase significantly from the 5 to 10 times per year the court found plaintiffs made use of the easement, such use, according to defendant, could increase the burden on defendant's property and could change the use to which defendant had originally acquiesced.

Both parties, having found no cases on point in Illinois, rely on cases from other jurisdictions concerning the limiting of the scope and extent of a prescriptive easement by the prior character, purpose, and frequency of use, to argue their respective positions on this issue. One case, in particular is worthy of mention here, as it is the most factually similar of all the cited cases to the instant case.

In *Cushman v. Davis* (1978), 80 Cal. App. 3d 731, 145 Cal. Rptr. 791, relied upon by plaintiffs, the roadway in question had been used only 10 times per year, 5 in July and 5 in February, for purposes of bringing in equipment for spraying and picking in an apricot orchard. The owner of the dominant tenement planned to subdivide his property and wanted to use the roadway for multiple residential use by his proposed subdividees. The appellate court found that the use of the easement established by the predecessor in title of the dominant tenement was purely agricultural, only occasional, and never residential. The court stated that although normal residential development might reasonably be foreseen, the property owned by the owner of the easement had never been used for residential purposes and the pattern of the use by which the prescriptive right accrued, servicing of an apricot orchard during two months of the year, was not consistent with a residential pattern. The court concluded that the contemplated future use of the easement could become an extensive, daily, residential use of the roadway by an unknown number of subdividees, thereby unreasonably increasing the burden to the servient tenement. Accordingly, the appellate court affirmed the lower court's decision limiting the use of the easement to five times in February and five times in July.

In the instant case, no evidence was presented of any future contemplated use which would burden the servient tenement, as in *Cushman.* Moreover, in the present case, although the court found that plaintiffs used the roadway in question only 5 to 10 times per year, the testimony at trial showed that plaintiffs' use of the roadway occurred as needed, *e.g.,* they usually checked the fences after any big

storm. Thus, plaintiffs' use of the roadway did not occur at specific times of the year, as in *Cushman*, but in large part depended upon the weather patterns throughout the year. In that respect, we believe it would have been unreasonable for the trial court to order that plaintiffs could use the easement only 5 to 10 times per year.

Because there is presently no increase in the burden on defendant's property and no real evidence of any occurring in the future, there appears to have been no reason for the trial court to restrict the scope and extent of the easement as created. Accordingly, the trial court did not act improperly in denying defendant's motion to restrict plaintiffs' use of the easement to 5 to 10 times per year for the purposes for which it was used in the past. Whether future uses will go beyond the extent and scope of the easement is a matter for the future determination of the court, if and when the question is presented.

For the reasons stated, the judgment of the circuit court of Lee County is affirmed.

Affirmed.

SCHNAKE and STROUSE, JJ., concur.