WILLIAM DARTER, Plaintiff-Appellee, *v.* PHILLIP DARTER, a/k/a/ Phillipa Darter, *et al.*, Defendants-Appellants.

Fifth District    No. 80-74

Opinion filed December 8, 1980.

Kenneth Powless and James K. Powless, both of Marion, for appellants.

G. Patrick Murphy, of James W. Sanders & Associates, of Marion, for appellee.

Mr. JUSTICE KARNS delivered the opinion of the court:

Defendants, Phillipa Darter and Betty Jean Hall, appeal from the judgment of the Circuit Court of Williamson County determining the plaintiff, William Darter, to be the owner of a strip of land owned of record by the defendants. Defendants contend that the court erred in deciding the case on the theory that a disputed or unascertained boundary had been established by agreement, where the plaintiff pleaded and tried the case on a theory of adverse possession. The defendants further contend that plaintiff's claim to the land was without merit under either theory.

Prior to 1954, Philippa Darter, mother of the plaintiff and Betty Jean Hall, was the sole owner of Lots 15 and 16 in the C. W. & F. Mining Company's Third Addition to the City of Herrin, Illinois. The two adjacent lots formed one parcel 200 feet wide (each of the lots being 100 feet wide) and 407 feet in length. The lots were bounded on the north and south by streets, and lot 15 was bounded on the west by a street.

In 1954, Phillipa Darter conveyed as a gift to the plaintiff and his wife the northerly 262 feet of the lots. Mrs. Darter retained the southerly 145 feet of the two lots, where a house was situated in which she lived with her daughter, the co-defendant, and her daughter's husband, Ed Hall. In 1972, Mrs. Darter conveyed to the co-defendant a joint interest in the southerly 145 feet of the two lots.

A survey made after the filing of this lawsuit showed that the plaintiff's house was located at the extreme southern edge of the parcel conveyed to him by his mother. The plaintiff testified that in 1955, Ed Hall had complained about the plaintiff's children leaving toys on the property still owned by the plaintiff's mother. The plaintiff testified that his mother told him to plow a ditch down the middle of the land in question and "* * * to take the north half * * *." The plaintiff said that at the time he did not know where the actual boundary line was. Photographs taken at the time of trial showed a slight depression about 50 feet south of the plaintiff's house. Plaintiff also introduced testimony that he erected a fence on the ditch line, that in 1959 he installed a septic tank about 5 feet north of the ditch, that he used portions of the 50-foot strip for a driveway and a barnyard where he kept a cow and his children rode ponies, and that he had always mowed the strip.

The plaintiff's mother denied telling plaintiff to take the 50-foot strip, denied that the depression was a ditch dug by the plaintiff, and stated that the remnants of a fence along the line in question had been erected by her husband. She said that at all times her grandchildren had been free to play anywhere on her property. She testified that in 1973 and 1977 the plaintiff had asked her to give him the 50 foot strip of land. The defendants also introduced testimony that Ed Hall had planted a garden on the 50-foot strip as late as 1961 and that usually he, rather than plaintiff, had mowed this area.

In its judgment, the trial court made the following findings:

"4. A short time after the original transfer of the above-described property to her son, the grantor and the grantee measured the lots in question and agreed upon the location of the boundary line between them. (Apparently, this boundary line was some fifty-five feet (55') south of the true line.)

5. After this parol agreement was made, the Plaintiff marked the agreed upon boundary line by plowing a ditch at the agreed location. The evidence indicated that a depression still exists at this location. Thereafter, the Plaintiff and his family used the disputed fifty-five (55') strip together with the balance of the above-described property as their own.

6. Within the disputed area the Plaintiff placed a septic tank and septic field; he fenced a portion of this area within his barn lot; and, he used a portion of this area for his driveway.

7. Since the establishment of the boundary line, the Plaintiff's mother (and later the co-Defendant, Betty Jean Hall) did not use the portion of the property which is now in dispute.

8. That neither the Plaintiff nor the Defendant was aware apparently of the true line until the survey was made on February 12, 1979. See Plaintiff's Exhibit No. 1."

The court concluded that the theory of adverse possession, upon which the matter was tried, was not supported by the evidence. However, the court ruled that there was a binding agreement to establish a boundary line, citing *Cutler v. Callison* (1874), 72 Ill. 113, and *Bitter v. Saathoff* (1881), 98 Ill. 266, for the rule that while title cannot pass by parol agreement, the extent of ownership of land may be finally determined by agreement to establish a boundary line. The court ordered that title to a 55-foot strip of land immediately south of plaintiff's property of record be quieted in the plaintiff free from any claim of the defendants.

■■ Initially, we agree with the trial court's conclusion that the evidence did not support the claim of adverse possession, either because the use was permissive or because it did not last the full 20 years, and plaintiff

does not contend otherwise on appeal. However, we do not agree that there was a binding agreement to establish the boundary as determined by the trial court.

The trial court's ruling necessarily rests at least in part on its finding that a short time after the original conveyance to the plaintiff, the plaintiff and his mother measured the lots and agreed upon the location of the boundary line. The plaintiff did not testify that he and his mother actually measured the lots as found by the trial court. His mother testified that they had measured the lots, although it is not clear whether she was referring to the time of her original conveyance to the plaintiff, the time of the survey after the lawsuit had been filed, or both. *Wright v. Hendricks* (1944), 388 Ill. 431, 58 N.E.2d 453, took note of the rule that an unascertained or disputed boundary line may be established by parol agreement and possession in pursuance thereof. However, *Wright* held that this rule does not apply if the intention of the parties was merely to determine the true line. Thus, the finding of an agreement based on a measurement of the lots as conveyed would militate against applying the rule for establishment of unascertained or disputed boundaries by parol agreement.

In *Cutler v. Callison*, it was entirely clear that, at the time of the agreement, there in fact was a dispute as to the location of the boundary line, and that both parties agreed to treat a hedgeline as the boundary, even if a survey or later determination should determine it not to be the true line. Here, even accepting plaintiff's testimony that his mother told him to plow the ditch and take the strip of land to the north, he did not claim that he thought that this land was his prior to the time his mother told him to take it.

■■ Nor do we think that the boundary between plaintiff's property and that of his mother can properly be characterized as "unascertained" following the conveyance in 1954. *Skinner v. Francisco* (1949), 404 Ill. 356, 88 N.E.2d 867, held that a boundary was not unascertained within the meaning of the boundary agreement rule, where the property could have been located by a survey or even the running of a simple measurement. Here the boundary in question could have been ascertained by running a north-south measurement of the property, which consisted of platted lots bounded by streets on the north and south. It is undisputed that the legal description was sufficient to allow an accurate survey. Under these circumstances, we do not think it appropriate to uphold a parol agreement to establish a boundary 55 feet from its actual location on the theory that the boundary was unascertained at the time of the purported agreement.

Because we have concluded that the court erred in concluding that the boundary was established by the agreement, we need not address the

defendants' contentions that the court erred in deciding the case on a theory other than that on which the case was pleaded and tried.

The judgment of the Circuit Court of Williamson County is reversed.

Reversed.

KASSERMAN, P. J., and HARRISON, J., concur.