MICHAEL DOBRINSKY *et al.*, Plaintiffs-Appellees and Counterdefendants-Appellees, v. JAMES WADDELL, Defendant (William Ingrum *et al.*, Defendants-Appellants and Counterplaintiffs-Appellants).

Fourth District   No. 4—92—0107

Opinion filed September 3, 1992.

Barber, Segatto, Hoffee & Hines, of Springfield (Bernard G. Segatto III, of counsel), for appellants.

Thomas R. Appleton, of Morse, Giganti & Appleton, of Springfield, for appellees.

JUSTICE LUND delivered the opinion of the court:

This is a dispute over a property line in a residential area of the Village of Illiopolis. Illiopolis has a population of approximately 1,150 and is located between Decatur and Springfield. Kelsan Heights Addition (Addition) is shown by a plat recorded on July 12, 1957, and the north line of the Addition borders agricultural fields. We are concerned with certain lots in a one-half block containing six lots, which

block is bordered on the east by a dead-end section of Cherry Street, on the south by Lawrence Street, on the west by a dead-end section of Foster Street, and on the north by the north line of the Addition. The lots run lengthwise north and south, with lot No. 48 being on the east end of the half block and lot No. 53 being on the west end of the half block.

The 1957 plat shows each lot (Nos. 48 through 53) to be 150 feet by 80 feet, for a total east-to-west distance of 480 feet. However, another survey was completed in 1966, which was reduced to a plat showing the overall width to be 495 feet bordering Lawrence Street and 495.5 feet paralleling on the north side of the half block. The 1966 plat based on the resurvey was not recorded until the current litigation, and for technical reasons, was ordered vacated. The extra 15 to 15½ feet do, as shown by the evidence, exist.

James Waddell owned the tract at the time of the resurvey. He subsequently sold lot Nos. 48, 50, 51, 52, and 53, treating them as 82.5 feet in width. Houses were built on lot Nos. 48, 50, 51, and one house was built on lot Nos. 52 and 53.

Michael Dobrinsky and his wife, Janet, purchased lot No. 48 with the house thereon in 1976. While survey pins from the resurvey were in existence in the half block, Michael Dobrinsky stated that he could not find them. In an attempt to find his west property line, he measured from the east boundary of Foster Street (the west line of lot No. 53) east 400 feet. The 400 feet would have been the total width of lot Nos. 49 through 53, as incorrectly shown on the 1957 plat. The 400 feet from Foster was to a point actually 95 feet from the *east* side of lot No. 48.

The Dobrinskys planted trees approximately five feet east of the line established by the 400-foot measurement. They mowed grass to the west of the trees, to approximately the 400-foot measurement, or beyond that to about the middle of the vacant lot.

William and Donna Ingrum purchased the house on lot No. 50 in 1988. They also purchased lot No. 49 from Waddell in 1988. The present action arose over a dispute with what the Dobrinskys claimed as their west property line. The trial court's order dated January 9, 1992, held as follows:

> "IT IS THEREFORE ORDERED that Plaintiffs have proved their right to possess Lot 48 of Kelsan Heights Addition up to 15 feet to the West of the platted line of the western boundary of said Lot 48 and has re-established said western boundary of Lot 48 by the acquiescence by Defendants WILLIAM INGRUM and DONNA INGRUM's predecessors in title.

That portion of Plaintiffs' Complaint and Defendants' Counter Complaint seeking monetary damages are denied. Each party shall bear its own costs of suit. Judgment for Plaintiffs for possession of said property is allowed."

The Ingrums appeal from this judgment.

■ We begin our analysis of the law by recognizing the excess 15 to 15½ feet in the subdivided half block would normally be apportioned among the six lots. (*May v. Nyman* (1972), 3 Ill. App. 3d 580, 585, 278 N.E.2d 97, 101; *Nilson Brothers, Inc. v. Kahn* (1924), 314 Ill. 275, 278, 145 N.E. 340, 341; 5 Ill. L. & Prac. *Boundaries* §3 (1953).) The 1966 resurvey plat illustrates such an apportionment, and the pins placed by the surveyor in 1966, which still exist, are placed based on the apportionment rule.

The disputed tract in the present case is part of lot No. 49, legal title to which remained in James Waddell from his 1966 purchase of lot Nos. 48 through 53, until he sold lot No. 49 to William and Donna Ingrum. There is no question but that the Dobrinskys planted a row of trees on the easterly side of lot No. 49 and often mowed at least the easterly portion of lot No. 49.

■ As stated, the trial court awarded the Dobrinskys this 15 to 15½ feet, based on a theory of acquiescence by James Waddell.

"Where a boundary between two tracts is unascertained or in dispute, the line may be established, first by parol agreement and possession; second, by an agreement implied from unequivocal acts and declarations of the parties and acquiescence for a considerable period of time; and third, in the absence of any agreement, by undisturbed possession for more than twenty years." *McLeod v. Lambdin* (1961), 22 Ill. 2d 232, 235, 174 N.E.2d 869, 871.

See also *Ginther v. Duginger* (1955), 6 Ill. 2d 474, 481, 129 N.E.2d 147, 151; *Nitterauer v. Pulley* (1948), 401 Ill. 494, 498, 82 N.E.2d 643, 646.

■ If the dispute only relates to the location of the actual boundary line as determined by the subdivision plat, and that line can actually be ascertained from existing survey pins, then the actual survey will prevail over a parol agreement. (*Wright v. Hendricks* (1944), 388 Ill. 431, 434-35, 58 N.E.2d 453, 454; *Darter v. Darter* (1980), 91 Ill. App. 3d 322, 325, 414 N.E.2d 862, 864.) However, the present case appears to be based not on the actual surveyed boundary, but upon a claim by the Dobrinskys to the disputed tract determined from the 400-foot measurement back from the western edge of lot No. 53 and used by them since 1976.

It is clear there was no parol agreement between the Dobrinskys on one side, and either James Waddell or William and Donna Ingrum on the other side. There is an absence of 20-year possession, so adverse possession could not justify the court's result. The remaining method of establishing an interest without a conveyance, "acquiescence," requires an implied agreement from *unequivocal* acts and declarations, *and* acquiescence for a considerable period of time. Obviously, a substantial burden is placed upon the nontitleholder claimant in establishing this acquiescence. So, for example, in *McLeod*, a hedge fence of trees running north and south, though 20 to 25 feet east of the true government surveying line, was recognized, utilized and accepted by the respective owners as the line between their two tracts for more than 20 years prior to the legal action. After the hedge fence was removed, the respective owners followed an arrangement whereby in the fall of each year, they erected an electric fence from a stump at the south and to a wooden stub at the north end along the hedge fence line to pasture their cattle; in the spring and summer they took down the wire to facilitate cultivation. The *McLeod* court found the respective owners' agreement was fairly implied to establish and recognize the hedgerow as the boundary line. The court further noted possession for over 20 years was also shown.

■ The policy issue in actions of this kind is basically the same. The decision in *White v. Harris* (1903), 206 Ill. 584, 592, 69 N.E. 519, 522, illustrates that policy:

" 'A party, claiming title by adverse possession, always claims in derogation of the right of the real owner. He admits that the legal title is in another. He rests his claim not upon a title in himself, as the true owner, but upon holding adversely to the true owner for the period prescribed by the Statute of Limitations. Claiming a benefit from his own wrong, his acts are to be construed strictly.' (*Cornelius v. Giberson*, 25 N.J.L. 31). 'Adverse possession cannot be made out by inference or implication, for the presumptions are all in favor of the true owner, and the proof to establish it must be strict, clear, positive and unequivocal.' (*Zirngibl v. Calumet Dock Co.* 150 Ill. 430.) The rule is, that every presumption will be made in favor of the holder of the legal title, and no presumption will be made in favor of the holder of color of title only. (*Kurz v. Miller*, 89 Wis. 426)."

Furthermore, use of vacant and unoccupied land is presumed to be permissive and not adverse (*Parker v. Rosenberg* (1925), 317 Ill. 511, 517, 148 N.E. 269, 272), and cannot ripen into prescriptive right,

whatever length of time such permissive use is enjoyed (*Rush v. Collins* (1937), 366 Ill. 307, 314-15, 8 N.E.2d 659, 662-63; *Monroe v. Shrake* (1941), 376 Ill. 253, 256, 33 N.E.2d 459, 461). While *Parker, Rush,* and *Monroe* involved easements, we fail to see why the presumption would not apply as to all unoccupied land. See *Darter,* 91 Ill. App. 3d at 324, 414 N.E.2d at 864.

■ James Waddell testified that he relied on the 1966 survey when he sold lot Nos. 48 through 53. He built the houses on lot Nos. 48 and 51 and did not remember if he built the house on lot No. 50. The houses he built were located as if the lots were 82.5 feet wide, rather than 80 feet. He, at times, had lot No. 49 mowed and, while being aware that trees were planted on the lot by the Dobrinskys, did not agree to or evidently disagree with their planting. According to Michael Dobrinsky, Waddell told Dobrinsky that he was planting trees on Waddell's lot. Basically, lot No. 49 was left vacant until it was sold in 1988.

To uphold the trial court's decision in this case would make mockery of the tests repeated in *McLeod, Ginther* and *Nitterauer,* ignoring the significance of taking another's property without compensation. The presumption of permissive use of unoccupied land also applies under the facts presented. Here, we have no declaration by Waddell indicating an agreement to the Dobrinskys' right to the disputed tract. The failure to object to either the Dobrinskys' tree planting or mowing is not an *unequivocal* act indicating recognition of the validity of the Dobrinskys' claim. In fact, Michael Dobrinsky's account of his conversation about the trees indicates a somewhat confrontational encounter, rather than submission. According to the evidence, owners of both lot Nos. 48 and 50 helped maintain lot No. 49. The evidence did not include unequivocal acts by Waddell and was not sufficient to find an implied agreement.

The owners of both lot Nos. 48 and 49 are parties to this litigation. On remand, the trial court is directed to enter a judgment stating that lot Nos. 48 and 49 are to be determined by the 1966 survey plat, with the Dobrinskys to have right to possession of lot No. 48 and the Ingrums to have right to possession of lot No. 49.

Reversed and remanded with directions.

STEIGMANN and KNECHT, JJ., concur.