2026 IL App (1st) 250920-U

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

FIRST DIVISION
June 22, 2026

No. 1-25-0920

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

_____

| | | |
|---|---|---|
| WILLIAM F.A. PENN and JULIE A. PENN, | ) | |
| | ) | Appeal from the |
| Plaintiffs and Counterdefendants- | ) | Circuit Court of |
| Appellees and Cross-Appellants, | ) | Cook County |
| | ) | |
| v. | ) | No. 22 CH 9697 |
| | ) | |
| CHARLES W. FILL and DARLENE NOVAK, | ) | The Honorable |
| | ) | Caroline Kate Moreland, |
| Defendants and Counterplaintiffs- | ) | Judge Presiding. |
| Appellants and Cross-Appellees. | ) | |

_____

PRESIDING JUSTICE FITZGERALD SMITH delivered the judgment of the court. Justices Howse and Cobbs concurred in the judgment.

**ORDER**

¶ 1    *Held:* The appellate court affirms the trial court's judgment following a bench trial that affirmative defenses of adverse possession and prescriptive easement were not established and also affirms the amount of attorney fees awarded to plaintiffs on claim for abatement of zoning ordinance and building code violations.

¶ 2    Plaintiffs William F.A. Penn and Julie Penn sued defendants Charles W. Fill and Darlene Novak on claims of trespass, private nuisance, quiet title, and abatement of zoning ordinance and building code violations. The defendants raised affirmative defenses of adverse possession and the right of prescriptive easement. The action proceeded to a bench trial, wherein the trial court found

that the defendants had failed to establish their affirmative defenses and entered judgment on the plaintiffs' claims. The defendants appeal, arguing that the trial court's finding that they failed to establish their affirmative defenses was against the manifest weight of the evidence. The plaintiffs cross-appeal, arguing that the trial court failed to award them the full extent of their recoverable attorney fees on their claim to abate the zoning ordinance and building code violations. We affirm the judgment of the trial court.[1]

¶ 3                                I. BACKGROUND

¶ 4        The first three counts of the plaintiffs' amended complaint allege causes of action for trespass, private nuisance, and to quiet title concerning three parcels of real estate that the plaintiffs purchased in 2021 from the University of Chicago (University). The plaintiffs reside at 1031 East 48th Street in Chicago, on a lot set back several hundred feet from the street. Between the street and the plaintiffs' residence are three additional parcels of real estate, each of which has a unique property index number (PIN). The northernmost parcel, with frontage on East 48th Street, has a PIN of 20-11-107-049 (the 049 parcel). It is a wooded parcel upon which no residence or other structure sits. South of the 049 parcel is a second parcel having a PIN of 20-11-107-048 (the 048 parcel). South of the 048 parcel is a third parcel having a PIN of 20-11-107-056 (the 056 parcel). South of the 056 parcel is the plaintiffs' residence. A long asphalt driveway runs north-south along the eastern edge of all three parcels between East 48th Street and the plaintiffs' residence.

¶ 5        The defendants raised affirmative defenses of adverse possession and prescriptive easement. The defendants reside at 1021 East 48th Street, which is also set back from the street. The defendants' adverse possession and prescriptive easement defenses pertain primarily to the 048

---

[1] Unless otherwise dictated by context, we will refer to the respective parties collectively as "the plaintiffs" and "the defendants." However, the singular reference to "plaintiff" will refer to William F.A. Penn, and the singular reference to "defendant" will refer to Charles W. Fill.

parcel, which is immediately east of and adjacent to their residence. They also raised an adverse possession defense concerning a small portion of the 056 parcel into which they encroached when constructing their back yard fence, which the plaintiffs did not contest in this case. The defendants also filed a counterclaim seeking to enjoin the plaintiffs from interfering with their use of that portion of the parcels as to which the plaintiffs were claiming a right. That counterclaim did not request any further declaratory relief.

¶ 6        Also, a fourth count of the plaintiffs' amended complaint sought to abate certain zoning ordinance or building code violations that they alleged existed on the defendants' property. See 65 ILCS 5/11-13-15 (West 2022). In summary, these claims were that the defendants were residing in a structure that Cook County assessed as a "residential garage" for tax purposes, and their property failed to meet the minimum lot size and setback requirements for single family residential zoning. The plaintiffs alleged that the defendants' use of their property for a residence was unlawful in violation of certain Cook County and City of Chicago zoning ordinances and that the defendants could not claim a prescriptive easement to access an unlawfully used property. The plaintiffs also alleged that the defendants violated certain building codes of the City of Chicago by excavating and installing a swimming pool in their back yard without a permit and depositing excavated soil on the 048 and 049 parcels.

¶ 7        The defendants raised an affirmative defense to count four that the building in which they lived was originally the coach house to a larger estate; it had been used as a residence by successive owners since at least 1945, and it was therefore a lawful nonconforming use under applicable zoning laws. Otherwise, the defendants' answer largely failed to explicitly admit or deny these allegations of count four, and this led to the trial court granting a motion by the plaintiffs to deem these allegations judicially admitted prior to trial.

¶ 8        The trial court conducted a two-day bench trial in which it heard the testimony of seven witnesses. Numerous photographs demonstrating the character of the property at issue were introduced into evidence by both sides. We summarize the salient testimony as follows.

¶ 9        Defendant testified that he and his ex-wife (since deceased) moved into the residence at 1021 East 48th Street in 1985. He purchased the house from Cynthia Pittman, a wildflower gardener who had maintained a "completely overgrown and beautiful" garden on the 048 parcel adjacent to the house. When he saw the gardens for the first time, it was "quite clear they were associated with the house." A gravel driveway running east-west also existed on the 048 parcel south of the gardens and adjacent to the house. At the end of the driveway on the 048 parcel was a concrete pad, which was next to the home's front door and has been regularly used by defendant, his family members, and guests to park vehicles since 1985. Throughout that time, they have always accessed that east-west gravel driveway by using the adjacent north-south asphalt driveway that extends north to East 48th Street.

¶ 10       Defendant testified that since 1985, he has maintained and added to the gardens that existed on the 048 parcel. By at least 1993, he had extended the gardens south of the gravel driveway and installed a border with rubber edging. With reference to the photographs in evidence, defendant identified in his testimony many of the specific groundcover plants and trees he had added and maintained. Asked how he maintained the gardens, defendant testified that he had to "do a lot of culling because there are these trees that take over." He referred to them as "weed trees" or hackberry trees. He explained that they "start out as little shoots, and then they get to be these giant trees" that hollow out and fall over, which has occurred several times on the property. He testified that his maintenance also involves getting "rid of the invasive stuff." Defendant additionally identified a walkway of concrete and a walkway of flagstone bricks that run on the 048 parcel

between the parking pad, his front door, and the gate to his back yard; these have existed since he moved in, although he has maintained them.

¶ 11    On adverse examination, defendant acknowledged that 1021 East 48th Street has its own paved driveway that extends north to East 48th Street. He also testified that when he moved into his residence in 1985, he knew that the 048 parcel was owned by the University. He acknowledged that someone from the University had called him shortly after 1985 inquiring if he was interested in buying the three parcels, but he did not do so.

¶ 12    After learning that the University was contemplating a sale of the three parcels to a developer, defendant drafted a letter dated August 10, 2016, addressed to James Hennessy of the University's department of land management. Although defendant denied that he ever sent the letter to Hennessy, he acknowledged that he faxed or e-mailed a draft of it to plaintiff to review. He testified that he drafted the letter hoping that the University would understand that he and the plaintiffs had a stake in the parcels. Defendant agreed that the statements in the letter were true.

¶ 13    In the letter, defendant wrote that he lived "adjacent to a lot which is owned by the University," which he identified using the PIN for the 048 parcel and referred to in his letter as the " 'east lot.' " He explained the history of his home and surrounding parcels, including how his house once had been the coach house of a larger estate and decades before had been moved off the street "into the woods" by a former University law professor named Walter Blum. He went on to explain how the house's next owner, Cynthia Pittman, had been an extraordinary gardener focused on indigenous species and perennials that "[s]he along with other neighbors planted *** throughout my yard and the east lot. It was all cared for as one piece of property, and gardened as such to this day." He wrote that since his purchase of the home 30 years earlier, he had "continued to maintain the gardens on my lot and the east adjacent lot." He characterized those gardens as

"not a tea garden. It is a simple, beautiful, natural, not overly manicured space. And we all enjoy it. It's ok to be a kid back here, its not precious landscape, Midwest indigenous, drought tolerant, durable. Beautiful to those who know what they are looking at." After stating that his neighbors enjoyed the area also, his letter continued as follows:

"We, refers to William Penn and his family, who have resided at 1031 E. 48th for 15+ years. They are terrific neighbors. We have jointly maintained this land, this lot, adjacent to our homes. They love it as open space, it truly characterizes Kenwood. This lot is not 'anyones', but loved by everyone. As it is truly unique in many ways, and meaningful to many people.

William Penn and I would like to jointly purchase the property in order to maintain our privacy, the history of the place, and what we have worked to establish here. ***

When I first moved here, your office offered to sell this property, and the two others adjacent (-049 and -051 [*sic*]) to me, for $40,000. *** I don't suppose that offer still stands. If so we will take it.

To sell this property to anyone but us would be heartbreaking. The ensuing house with fences would be wrong for the place, and the destruction of this garden with its rich and ongoing history would be absolutely heartbreaking, certainly not progressive thinking. Selling this property to someone else would serve one family while wrecking it for the surrounding neighbors. Greed is blinding, please be considerate of us and this neighborhood."

Defendant testified that his letter was referring more to the open space of the 056 parcel, not to the 048 parcel. Defendant acknowledged that nothing in his letter claimed that he already had ownership the 048 parcel or the right to use the driveway on it.

¶ 14 Defendant was also asked on adverse examination about an e-mail in evidence that had been sent to him by plaintiff dated June 7, 2021. Plaintiff's e-mail made reference to defendant having "asked if you could buy a portion of the land from us," and it went on to deny that request. Defendant acknowledged that he had asked the plaintiffs to buy a portion of the land they had purchased from the University.

¶ 15 Defendant also acknowledged that the structure in which he resided was taxed by Cook County as a residential garage. He testified that in 1993, the City of Chicago had issued him a building permit to extensively renovate his house as a single family residence. He acknowledged that he had installed a pool in his back yard and excavated to do so. He took some of the soil that he had excavated and spread it onto the 048 and 049 parcels. He did not obtain a permit for the excavation or to install the pool.

¶ 16 Plaintiff testified that he and his wife first purchased their home in 2003, and they eventually also purchased the 048, 049, and 056 parcels also from the University. Plaintiff testified that he reviewed defendant's August 10, 2016, letter with his attorney, who told defendant not to send it. Plaintiff testified over objection that the University's legal counsel later told him that he had in fact received defendant's letter, "and it was as we are seeing it today." Plaintiff testified that once defendant became aware that he and his wife were purchasing the three parcels in early 2021, defendant said to him, " 'That's great. Congratulations. Now, you know, let's talk about buying that strip of land that we've talked about before.' " The plaintiffs ultimately decided not to sell defendant any of the land, and plaintiff informed him of this decision in an e-mail sent on June 7, 2021. In response, the plaintiffs received a letter from the defendants' attorney asserting their ownership rights by adverse possession or prescriptive easement, which was the first time the defendants had claimed any interest in the three parcels.

¶ 17        Plaintiff testified that he had never seen either of the defendants working on the 048 parcel maintaining the trees or plants, with the exception of two occasions after they made a claim of adverse possession in June 2021. Plaintiff also testified that the area that they are claiming to be a "gravel" driveway is not actually gravel, but rather it is simply a rutted and muddy area. Grass grows in the center of the ruts, and plaintiff is the person who cuts it. Plaintiff further testified that the area the defendants are claiming is a concrete parking pad is so deteriorated and buried under mud and weeds as to be invisible. Disputing defendant's characterization of the 048 parcel as a garden, plaintiff testified that it is merely "an overgrown, dense mess, essentially what looks like a jungle sort of wooded, forested area." Plaintiff testified that any ground cover plants had "grown out of control over the years," and many of the trees on the parcel had fallen over. He testified that a person could "see no evidence of trimming, no evidence of maintenance."

¶ 18        Plaintiff Julie Penn testified similarly to her husband that since 2003, she has never seen the defendants performing any work or maintenance on the 048 parcel except for one instance, which was on the day before defendant's deposition in the instant case. She also characterized the 048 parcel as "just very wild and overgrown" and the driveway on it as "just dirt and weeds." She testified to two conversations with defendant in which he expressed a wish to buy the 048 parcel in the event the plaintiffs purchased the property. The first occurred on an unknown date, and defendant told her then that he wanted to build a garage with an apartment on top of it. The second was around late 2020 or early 2021, when defendant motioned toward the 048 parcel and said to her that "William told me I should talk to you about buying the lot."

¶ 19        At the conclusion of the evidence, the trial court found that the defendants had failed to meet their burden of establishing the elements of adverse possession by clear and unequivocal evidence. The trial court extensively reviewed the evidence. It found that the land was vacant and that

therefore the defendants' use of the dirt or gravel driveway on it was presumed to be permissive. The trial court noted that in defendant's letter of August 10, 2016, he admitted that the University owned the 048 parcel and never asserted that he was the owner of it. The trial court also found significant his statements offering to buy the parcel from the University and later from the plaintiffs, stating that they "disavowed" any prior claimed right of ownership. The court also referenced the photographs of the parcel that were in evidence, noting that the parcel was not fenced off in its entirety. It found that although defendant may have cleared up the parcel, his doing so "doesn't signify he owns the property."

¶ 20        The trial court thus ruled that, considering the defendants' failure to establish their affirmative defenses, the plaintiffs had established their claims for trespass, private nuisance (due to the dumping of soil onto the plaintiffs' property when defendants excavated for their swimming pool), and quiet title. As to count four of the plaintiffs' amended complaint, the trial court found that the defendants had effectively admitted to the claim by the judicial admissions in their answer that their residence is categorized a residential garage, that a residential garage may not be used as a residence under county or city zoning ordinances, and that a party may not obtain an easement to access property for an unlawful use. The trial court stated that because it was finding in favor of the plaintiffs on this count due to the defendants' admissions, its order was that the defendants were required to apply for a variance and were enjoined from accessing any of the property on lot 048. It further enjoined the defendants from having an unlawful swimming pool and required them to remove any debris placed on the plaintiffs' property due to the excavation for the swimming pool. The trial court stated that attorney fees were mandatory as to count four but that its order on that issue was subject to a petition for attorney fees.

¶ 21        A petition for attorney fees was thereafter filed by the plaintiffs. In it, they took the position

that the defendants' zoning ordinance and building code violations were "significant issues in the case, and were inextricably intertwined with other issues in the case." The plaintiffs requested total recoverable attorney fees, paralegal fees, and taxable costs of $82,758.45, although they asserted in the petition that they were "not requesting all of the fees and costs incurred in prosecuting this lawsuit." The fee petition was supported by the affidavit of plaintiffs' counsel Mark D. Roth.

¶ 22     The defendants filed a response to the fee petition in which they argued that the billing records in the fee petition lacked sufficient detail to allow a determination of the time that counsel spent dedicated solely to count four or to the ordinance and code violations involved in it. They argued that only a single entry, from December 16, 2023, could be construed as describing work performed in connection with a claim for ordinance or code violations.

¶ 23     The plaintiffs filed a reply brief in which they explained in greater detail their position that all case activities related to proving code violations, to proving that the plaintiffs owned the 048 lot, and to disproving the defendants' adverse possession and prescriptive easement affirmative defenses were "inextricably intertwined." The plaintiffs' reply brief also made a request for an additional $6,795.00 in attorney fees connected with enforcing their fee petition.

¶ 24     In ruling on the fee petition, the trial court reiterated that the allegations of count four had essentially been established by the defendants' failure to deny them in their answer, which the court had deemed judicial admissions prior to trial. It stated that under section 11-13-15 of the Illinois Municipal Code (*id.*), the plaintiffs were entitled to reasonable attorney fees incurred in enforcing that statute, as opposed to recovering fees on all of their claims. It referenced various legal principles, including that where a fee petition fails to differentiate fees incurred for work on a recoverable claim from those incurred for work on nonrecoverable claims, a trial court does not abuse its discretion in denying the petition; that it is incumbent upon a party seeking attorney fees

to submit sufficient evidence to support its petition; and that absent such proof, a party cannot rely on a generalized assumption that some fees were incurred without giving the trial court guidance as to the amount. The trial court went on to state that it found only two entries in the plaintiffs' fee petition that directly specified the code violations involved in count four. The first was the above-referenced entry of December 16, 2023, for $1,755.00. The second was the entry of January 8, 2025, for $3,015.00, for hearing on the motion to deem the allegations of count four judicially admitted. Thus, the trial court allowed the fee petition in the amount of $4,770.00.

¶ 25　　　The plaintiffs later filed a motion for rule to show cause alleging that the defendants had failed to seek a variance from the City of Chicago to allow their property to be used as a single family residence. This motion resulted in the trial court conducting an evidentiary hearing on November 12, 2025, at which time the defendants presented the testimony of a representative of the City of Chicago's department of planning and zoning that the issuance of the building permit in 1993 constituted zoning approval as a legal nonconforming development. Accordingly, the trial court entered a further order that no variance was required.

¶ 26　　　　　　　　　　　　　　　II. ANALYSIS

¶ 27　　　　　　　　　　　　　　A. Defendants' Appeal

¶ 28　　　On appeal, the defendants argue that it was against the manifest weight of the evidence for the trial court to find that they had failed to establish their affirmative defenses of adverse possession or prescriptive easement. They also argue that the trial court erred in refusing to declare that they had acquired title to the portion of the 056 parcel that they had enclosed by a fence.

¶ 29　　　A judgment following a bench trial is against the manifest weight of the evidence only when the trial court's findings appear to be unreasonable, arbitrary, or not based upon evidence or when an opposite conclusion is apparent. *Granville Tower Condominium Ass'n v. Escobar*, 2022 IL App

(1st) 200362, ¶ 27. We give great deference to the trial court as the trier of fact because it is in a superior position to observe the conduct and demeanor of the parties and witnesses and thus achieves a degree of familiarity with the evidence that a reviewing court cannot obtain. *Id.* We do not substitute our judgment for that of the trial court on matters regarding credibility of witnesses, the weight to be given evidence, or the inferences to be drawn from evidence. *Id.* We will not reverse merely because we disagree with the trial court's factual determination or would have reached a different conclusion had we been the trier of fact. *Thomas v. Weatherguard Construction Co.*, 2015 IL App (1st) 142785, ¶ 46. Instead, we will affirm the trial court's judgment as long as the record contains any evidence supporting it. *Granville Tower Condominium Ass'n*, 2022 IL App (1st) 200362, ¶ 27

¶ 30       The defendants' arguments on appeal do not draw sharp distinctions between the legal theories of adverse possession and prescriptive easement, and they begin with an argument unique to prescriptive easement law. Specifically, they contend that the evidence at trial was undisputed that commencing in 1985 and continuing for well over 20 years thereafter, they have made exclusive use of the north-south paved driveway and the east-west gravel driveway on the 048 parcel for vehicular access to the concrete parking pad adjacent to their home. They contend that no evidence was introduced at trial concerning the origin of the use of this way of accessing 1021 East 48th Street, and for this reason there arises "a presumption of a right or grant from the long acquiescence of the party upon whose land the way is located." See *Rush v. Collins*, 366 Ill. 307, 315 (1937). The trial court did not address this specific argument in its ruling.

¶ 31       An easement is a right or privilege in the real estate of another. *Chicago Title Land Trust Co. v. JS II, LLC*, 2012 IL App (1st) 063420, ¶ 32. Where an easement is found to exist, the owner of the easement has the right, for a limited purpose, to pass over or use the land of another. *Id.* A

prescriptive easement is a form easement that is established by long-term use of land without the permission of its owner. *Id.* "To establish an easement by prescription, the use of the way in question must have been—for a 20-year period—adverse, uninterrupted, exclusive, continuous, and under a claim of right." *Nationwide Financial, LP v. Pobuda*, 2014 IL 116717, ¶ 27. As the party claiming a prescriptive easement, it was the defendants' burden to establish these elements "distinctly and clearly." *Chicago Title Land Trust Co.*, 2012 IL App (1st) 063420, ¶ 32.

¶ 32        In prescriptive easement cases, the element of "adversity" requires that " '[t]he use must have been enjoyed under such circumstances as will indicate that it has been claimed as a right, and has not been regarded by the parties merely as a privilege or license, revocable at the pleasure of the owners of the soil.' " *Nationwide Financial*, 2014 IL 116717, ¶ 43 (quoting *Rose v. Farmington*, 196 Ill. 226, 229 (1902)). Concerning the specific argument that the defendants are making here, the law of prescriptive easements recognizes a rebuttable presumption regarding the establishment of adversity when the other elements have been proved and "the origin of the alleged easement is unclear." *Chicago Title Land Trust Co.*, 2012 IL App (1st) 063420, ¶ 32. In the *Rush* case relied upon by the defendants, the supreme court explained the operation of this presumption as follows:

> "Where a way has been used openly, uninterruptedly, continuously and exclusively for more than a period of twenty years, the origin of the way not being shown, there is a presumption of a right or grant from the long acquiescence of the party upon whose land the way is located. This presumption of a grant or adverse right is *prima facie* merely and may be rebutted. In the absence of evidence tending to show that such long-continued use of the way may be referred to a license or other special indulgence, which is either revocable or terminable, the conclusion is, that it has grown out of a grant by the owner of the land, and has been exercised under a title thus derived. The law favors this conclusion, because it will not presume any

man's act to be illegal. It is also reasonable to suppose that the owner of the land would not have acquiesced in such enjoyment for so long a period, when it was his interest to have interrupted it, unless he felt conscious that the party enjoying it had a right and a title to it that could not be defeated." *Rush*, 366 Ill. at 315.

The presumption is premised upon the ancient common law fiction of a "lost grant" from which the doctrine of prescriptive easement arises. See *Burrows v. Dintlemann*, 41 Ill. App. 3d 83, 85 (1976).

¶ 33        As stated above, the defendants argue that this presumption applies to their use of the north-south paved driveway and the east-west gravel driveway on the 048 parcel for driving across and parking vehicles because these driveways have been continuously used in this manner since before 1985, and no evidence was presented at trial showing the origin of the driveways' use in this way. The plaintiffs dispute that no evidence of the way's origin was presented, arguing that the home's first owner, Walter Blum, who was a law professor at the University, almost certainly received permission from the University to use the way. Initially, we question how clearly the defendants ever articulated to the trial court that they were raising this argument. Neither side draws our attention to how this argument was made. The best we can find is a statement by defendants' counsel in closing argument that "there's no testimony about the origin of how this driveway originated from the north south driveway to their land, no testimony at all. And when there's no such testimony of the origin of the easement, then the presumption is that *** it wasn't permissive. That's the presumption." Assuming the argument was never raised more clearly than this, we do not question the trial court for failing to specifically address it in its ruling.

¶ 34        Regardless of how clearly the defendants raised this argument in the trial court, we hold as a matter of law that the presumption upon which they are relying has no application to this case.

Another presumption that is applied under prescriptive easement law (as well as under adverse possession law) is that the use of vacant and unenclosed land is presumed to be with permission of the owner and not adverse. See, *e.g.*, *Parker v. Rosenberg*, 317 Ill. 511, 517 (1925); *Dobrinsky v. Waddell*, 233 Ill. App. 3d 443, 447-48 (1992). Thus, subsequent to its decision in *Rush*, our supreme court restated this principle in a way that makes clear that it does not apply when the land at issue is vacant and unenclosed:

> "It was held in [*Rush*] that the claim need not be well-founded but need be only a claim of right and where the way has been used openly, uninterruptedly, continuously and exclusively for more than a period of twenty years, the origin of the way not being shown, *and, parenthetically, where the land in origin is not vacant, open and unenclosed*, there is a presumption of a right from the long acquiescence of the holder of record title." (Emphasis added.) *Poulos v. F.H. Hill Co.*, 401 Ill. 204, 214-15 (1948).

This was the controlling principle applied in *Rita Sales Corp. v. Bartlett*, 129 Ill. App. 2d 45 (1970), which involved similar facts to the case at bar. There the plaintiff claimed a right of prescriptive easement over a strip of land on an adjacent lot that the plaintiff had long used for driving trucks onto its property. The plaintiff made this claim after the adjacent lot was purchased by new owners who notified the plaintiff that they intended to construct a building on it that would prevent the lot's further use as a driveway. *Id.* at 47-48. The court held that because the adjacent lot was vacant and unoccupied when the plaintiff began using it as a driveway, no presumption arose that such use amounted to a claimed right of easement. *Id.* at 53.

¶ 35     Likewise in this case, the trial court made an express finding that the land at issue was vacant and that the defendants' use of the dirt or gravel driveway was "a presumed permissive use of a driveway [on] vacant land." On appeal, the defendants dispute the trial court's finding that the 048

parcel was vacant or unoccupied land. They emphasize that it was improved with walkways, a driveway, a parking pad, and their "lush yard" of trees and gardens. The case upon which they primarily rely is *Schultz v. Kant*, 148 Ill. App. 3d 565, 572 (1986), wherein the court held that land used in part for planting and harvesting crops was not vacant for purposes of applying the presumption that the plaintiffs' use of a roadway over it was permissive.

¶ 36    We conclude that the trial court's finding that the 048 parcel was vacant and unenclosed land was not against the manifest weight of the evidence. The proper characterization of this land was a disputed issue of fact at trial. The defendants' position that it was maintained with intentionally unmanicured gardens and trees was contradicted by the plaintiffs' testimony that it was merely an "overgrown, dense mess" with fallen trees and no evidence of maintenance. Photographs admitted into evidence supported the characterization of it as a vacant urban lot that was unmaintained and overgrown. The photographic evidence also supported the plaintiffs' testimony that the only driveway on the parcel consisted of ruts in the dirt from years of vehicles driving over it. And it supported the plaintiffs' testimony that any concrete pad that had once existed on this property was heavily deteriorated. It was undisputed that no permanent structure or improvement had been erected on the parcel and that it was open and unfenced on several sides. The pathway on it was merely flagstones. Nothing about the defendants' use of the property in this fashion distinctly and clearly signified they were using it under claim of right. Instead, the defendants' use of this parcel in the manner as shown by the evidence appears fully consistent with the permissive use of a vacant lot owned by someone else.

¶ 37    Our above holding that it was not against the manifest weight of the evidence for the trial court to find that the 048 parcel was vacant unenclosed land, which gives rise to the presumption that the defendants' use of it was with permission, is largely determinative of the defendants'

remaining arguments on appeal. These arguments pertain to the "hostile or adverse" element of their case for adverse possession.

¶ 38     To establish a claim of title by adverse possession, proof must be presented that the party possessed the land in dispute for 20 years and that such possession was (1) continuous, (2) hostile or adverse, (3) actual, (4) open, notorious and exclusive, and (5) under a claim of title inconsistent with that of the true owner. *Miller v. Metropolitan Water Reclamation District of Greater Chicago*, 374 Ill. App. 3d 188, 189-90 (2007). Unlike in prescriptive easement cases, all presumptions in adverse possession cases are in favor of the title owner, and the burden of proof upon the adverse possessor requires that each element be proved by "clear and unequivocal evidence." *Joiner v. Janssen*, 85 Ill. 2d 74, 81 (1981).

¶ 39     In adverse possession cases, the element of hostility or adversity requires that possession involve "an assertion of ownership incompatible with any other claim of right." *Mann v. LaSalle National Bank*, 205 Ill. App. 3d 304, 309 (1990). Where property is used with the permission of its owner, possession is not hostile or adverse. *527 S. Clinton, LLC v. Westloop Equities, LLC*, 403 Ill. App. 3d 42, 49 (2010). Thus, in cases involving vacant and unenclosed land wherein the presumption of permissive use arises, "it must be clearly shown that the use of the land was adverse and not merely permissive." See *Mann*, 205 Ill. App. 3d at 309.

¶ 40     The defendants argue that the trial court's finding that their use of the 048 parcel was permissive and not adverse was unsupported by any evidence. Much of the defendants' argument on this point focuses on the affirmative evidence of permission introduced by the plaintiffs. Although we agree that some of the plaintiffs' affirmative evidence of permission may have been questionable, we nevertheless find that the defendants fell far short of their burden of presenting clear and unequivocal evidence to rebut the presumption that they were using this vacant and

unenclosed lot with permission and not adversely. As we have already explained above, nothing about the manner in which the defendants used this lot appears inconsistent with the permissive use of a vacant lot as to which they recognized that they were not the owners. They did not erect any permanent structure on it. By defendant's own testimony, his maintenance of the 048 parcel consisted largely of culling "weed trees" that grow quickly, hollow out, and fall over if not removed as small shoots. As the trial court recognized, clearing the parcel in this way does not signify an assertion of ownership over it. Likewise, driving across a rutted dirt driveway or parking on a deteriorated concrete pad does not signify an assertion of ownership incompatible with the rights of the title owner. Ultimately, we find the defendants' use of this property bears the hallmarks of being permissive, not adverse, and the trial court's finding on this point was not against the manifest weight of the evidence.

¶ 41 The evidence at trial further fell short of clearly and unequivocally showing that the defendants asserted a claim of ownership over the 048 parcel, which is also required to establish the element of hostility or adversity. See *id.*; *Town of Kaneville v. Meredith*, 351 Ill. 620, 625 (1933) ("In order to be hostile and adverse [possession] must be under claim of ownership."). We note that statements as well as acts of proprietorship over land are relevant to proving adverse possession (*Stoehr v. Saville*, 2023 IL App (4th) 220751, ¶ 14), and defendant's statements in his letter of August 10, 2016, cast strong doubt over whether the defendants truly asserted that they were the owners of this parcel during the relevant 20-year period. As noted by the trial court, the first sentence of the defendant's letter recognizes the University as the owner of the parcel. It states, "I live at 1021 East 48th St., adjacent to a lot *which is owned by the University*, and, from what I have heard, is currently for sale. The lot is numbered 20-11-107-048 ***." (Emphasis added.) Defendant never claims in the letter to be the owner of the 048 parcel, and instead he makes various

statements indicating he did not regard himself as its owner. Among these are his statement, "This lot is not 'anyones', but loved by everyone." He explains how he jointly maintains the property with plaintiff and offers to purchase the property jointly with him. And his letter is a clear recognition that "[s]elling this property to someone else" other than him was within University's rights as its owner. None of these statements indicate clearly and unequivocally that the defendants asserted ownership over this parcel from 1985 onward.

¶ 42       The defendants take issue on appeal with the trial court's finding that his offer in the letter to jointly purchase the property with the plaintiff amounted to a "disavowal" of any claimed right of ownership. But even if we accepted this argument, there is still ample evidence from which to conclude that the element of hostility or adversity was not proved by clear and unequivocal evidence. Accordingly, we hold that the trial court's finding that the defendants failed to establish their affirmative defenses of adverse possession and prescriptive easement was not against the manifest weight of the evidence.

¶ 43       The defendants' second argument is that it was against the manifest weight of the evidence for the trial court to deny the defendants' request to declare that they had acquired ownership by adverse possession of the small portion of the 056 parcel onto which the defendants had encroached when they fenced in their back yard. However, we fail to understand the defendants' argument that they did not obtain this relief. While we recognize that the trial court initially declined to make an oral ruling concerning the defendants' adverse possession of the fenced-in area of the 056 parcel, it subsequently entered a written judgment order that includes the following declaration:

> "The Court declares that the Defendants have no legal or equitable rights and/or title in and/or to the parcels of land located in Cook County, IL identified as property index numbers

20-11-107-048, 20-11-107-049, and 20-11-107-056, with the exception of that portion of lot

20-11-107-056 presently enclosed by a fence and more particularly legally described as:

> That part of Lots 3 and 12 in the Assessor's Division of Block 12 in Lyman, Larned and Woodbridge's Subdivision of the East ½ of the Northwest ¼ of Section 11, Township 38 North, Range 14 East of the Third Principal Meridian, described as follows: commencing at the intersection of the North line of the South 50 feet of said Lot 12 with the West line of the East half of said Lot 12, thence South, along the said West line, 46.50 feet to the point of beginning; thence continuing South, along said West line, 3.5 feet to the South line of said Lot 12, being also the North line of said Lot 3; thence West, along the North line of said Lot 3, a distance of 0.28 feet, to the East line of the West 50 feet of said Lot 3; thence South, along said East line, 43.50 feet; thence East 4.40 feet; thence Northerly 47.03 feet to a point 5.74 feet East of said West line; thence West 5.74 feet to the point of beginning, in Cook county Illinois ('Fenced Portion of the 056 Lot')."

¶ 44 Although the above declaration is phrased as recognizing an exception to property as to which the defendants do not have right or title, we would interpret it also as recognizing that the defendants do have right and title to that portion of the 056 parcel enclosed by the fence pursuant to the legal description above. This title was clearly acquired by adverse possession, as the plaintiffs acknowledge in their appellee brief that they "did not contest [the defendants'] adverse possession affirmative defense over that fenced-in portion of the 056 Lot." Accordingly, the defendants appear to have received the relief that they are requesting on this issue, and we see no reason to remand for further ruling by the trial court.

¶ 45                                B. Plaintiffs' Cross-Appeal

¶ 46　　The plaintiffs cross-appeal the amount of attorney fees that the trial court allowed under count four of their amended complaint, which sought to abate zoning ordinance and building code violations that existed on the defendants' property and to prohibit their use of it. Again, those violations in summary were that the defendants' home was assessed by Cook County as a "residential garage," that using a residential garage as residence was unlawful under city and county zoning ordinances, that the lot on which the defendants' home was located failed minimum lot size and setback requirements for single family residential zoning, and that in 2016 the defendants had excavated for and constructed a swimming pool in their back yard without obtaining permits. They had also dumped some of the soil from the excavation of the swimming pool on the 048 and 049 parcels.

¶ 47　　The statutory authority under which the plaintiffs filed count four was section 11-13-15 of the Illinois Municipal Code (65 ILCS 5/11-13-15 (West 2022)), which is a fee-shifting statute. In summary, that section authorizes an owner of real property within 1200 feet of a building, structure, or land that is used in violation of certain zoning ordinances or building codes who shows that his property will be substantially affected by the alleged violation to institute an action to prevent the unlawful use; to prevent occupancy of the building, structure, or land; or to restrain, correct, or abate the violation. If an owner files such suit and "the court finds that the defendant has engaged in any of the foregoing prohibited activities, then the court shall allow the plaintiff a reasonable sum of money for the services of the plaintiff's attorney." *Id.*

¶ 48　　The plaintiffs argue that the trial court erred in allowing fees of only $4,770.00 for two entries on their fee petition. They argue that the trial court should have allowed the full amount of fees sought, which was $89,553.45. The plaintiffs' position is that establishing their right to relief under section 11-13-15 required them to prove that they were the owners of the 048 parcel, and this

incorporated all work to prove their trespass, nuisance, and quiet title claims and to defend against the affirmative defenses of adverse possession and prescriptive easement. Accordingly, they argue that they should be entitled to attorney fees for work on aspects of the case for which fee-shifting would not normally be allowed on the theory that this work was "inextricably intertwined" with that needed to establish their claim under section 11-13-15.

¶ 49     A determination involving the amount of attorney fees properly awarded is a matter within the sound discretion of the trial court that we will not disturb absent an abuse of discretion. *In re Marriage of S.D.*, 2012 IL App (1st) 101876, ¶ 53. In some instances, a trial court has direction to allow attorney fees for work done on claims for which fee-shifting is not normally available where that work is so "inextricably intertwined" with work on a claim for which fee-shifting is available that it cannot be distinguished. See *Dubey v. Public Storage, Inc.*, 395 Ill. App. 3d 342, 361 (2009). It is incumbent upon a party petitioning for attorney fees to submit evidence sufficient to support the claim. *GMAC Mortgage Corp. v. Larson*, 232 Ill. App. 3d 697, 703 (1992). Where a party can recover attorney fees for some of the claims brought but not others, the party moving for fees must differentiate what part of the attorney's work was spent on the claims for which recovery is allowed. *Id.*; accord *Bank of America v. WS Management, Inc.*, 2015 IL App (1st) 132551, ¶ 125. Where a fee petition does not differentiate work performed on fee-shifting claims from work related to other claims, a trial court does not abuse its discretion in rejecting the fee petition entirely. *Schorsch v. Fireside Chrysler-Plymouth, Mazda, Inc.*, 286 Ill. App. 3d 1028, 1031 (1997) (citing *Chesrow v. Du Page Auto Brokers, Inc.*, 200 Ill. App. 3d 72, 78 (1990)).

¶ 50     We hold that the trial court's award of fees in this case was not an abuse of discretion. In so holding, we reject the argument that work performed by the plaintiffs' attorney to defeat the adverse possession and prescriptive easement defenses and to establish the trespass, nuisance, and

quiet title claims was so inextricably intertwined with proving the zoning ordinance and building code violations in count four that the work could not be distinguished. In our view, count four formed a minor part of this case that was highly distinguishable from the other issues and that was mostly established by the judicial admissions in the defendants' answer. Accordingly, the plaintiffs' attorney was not relieved of his duty to submit a fee petition that sufficiently distinguished work specific to count four from other work performed in the case. In allowing fees for only two entries that clearly pertained to work specific to count four, the trial court cited the principle from the *Schorsch* case in the preceding paragraph and reasoned that the plaintiffs' fee-petition had not provided it with sufficient guidance to distinguish between work attributable to count four and work attributable to the other counts. We have reviewed the fee petition and find no abuse of discretion in this determination.

¶ 51    This holding extends also to the plaintiffs' argument that the trial court specifically erred by disallowing the fees incurred in enforcing the fee petition. We recognize that Illinois law contains some authority that a trial court does not abuse its discretion by allowing reasonable attorney fees for work involved in enforcing a fee petition. See *Rackow v. Illinois Human Rights Comm'n*, 152 Ill. App. 3d 1046, 1064 (1987). However, the plaintiffs have not cited and the court's research has not uncovered authority for the proposition that a trial court abuses its discretion by denying fees for work involved in enforcing a fee petition. We hold in this case that it was not an abuse of discretion for the trial court to deny fees incurred in the enforcement of this fee petition. Although the trial court did not specifically address this issue in its ruling, we interpret its overall comments to mean that it found that there were likely additional entries in the fee petition that could have been shown to relate to count four but that the plaintiffs' attorney had failed to differentiate them as such. Instead, the plaintiffs' attorney had taken the position that nearly all work done on this

case was "inextricably intertwined" with proving count four. Having chosen to pursue this position in the trial court, we find that it is inappropriate on appeal for the plaintiffs' attorney to now point to individual entries on his fee petition and fault the trial court for failing to parse these out as being related to count four. This includes entries pertaining to enforcing the fee petition. No abuse of discretion occurred under the facts of this case.

¶ 52     Finally, we acknowledge the defendants' request in their cross-appellee brief that we should vacate all attorney fees awarded in this case based upon the trial court's ruling after trial that their residence was a legal nonconforming development and that no variance was required. Although the defendants' response to the motion for rule to show cause contains a request that the trial court vacate its order of fees, it does not appear that this request was pursued to ruling in the trial court. We reject the defendants' request on appeal to vacate the fee award.

¶ 53                                III. CONCLUSION

¶ 54     For the foregoing reasons, the judgment of the trial court is affirmed.

¶ 55     Affirmed.